The State, ex rel. Rhodes, *v.* Brown, Secretary of State.

(No. 73-65—Decided May 10, 1973.)

*Messrs. Chamblin, Snyder & Casey* and *Mr. Larry H. Snyder,* for relator.

*Mr. William J. Brown,* attorney general, *Mr. Thomas V. Martin,* for respondent.

*Per Curiam.* Section 2 of Article III of the Ohio Constitution provides:

"* * * No person shall hold the office of Governor for a period longer than two successive terms of four years."

Relator argues that the foregoing language is ambiguous and that, therefore, this court must interpret its meaning in light of the words employed by the framers and

the circumstances under which the constitutional amendment was adopted by the electorate. Respondent agrees that the language "could be more precise."

Relator contends that the proper interpretation is one that limits only the number of successive four-year terms which may be served by any individual. Thus, since relator's last term of office has been succeeded by another four-year term held by one other than relator, he believes that he should now be eligible to seek and serve in the office again.

At the heart of relator's position is his view that any other interpretation of the disputed language would require that the word "successive" be inconsistently construed and unreasonably applied.

Respondent states that the word "successive" may be kept and employed in the language by interpreting the phrase to mean that, while a person is barred from holding the office of Governor if he has at any time held that office for two successive four-year terms, the same person could nevertheless serve any number of nonsuccessive four-year terms.

Basic to respondent's argument is that the word "period" must be construed in one fashion when dealing with a person in relator's position, but in another manner in order to permit the unlimited holding of nonsuccessive four-year terms.

Respondent further points out that when the electorate entered the voting booth and adopted this amendment, they were presented with a ballot which stated, in one place, that they were to approve or reject a "limitation on number of terms for Governor," and, in another place, that the issue was whether "to limit the office of Governor to two successive terms." However, at a third place on the ballot, the voter was told that the language to be adopted or rejected as an amendment to the Constitution included: "No person shall hold the office of governor for a period longer than two consecutive terms of four years."

We agree with both parties that the language of this amendment is ambiguous. Furthermore, we find it ob-

vious that the electorate was faced with an ambiguous ballot when the vote was taken upon the amendment. Under such opaque circumstances, some precedent would support a declaration that the entire adopting procedure was so hopelessly confused that the amendment is void. However, the adoption of a constitutional amendment by the electors constitutes the exercise of a sacred American right, and we deem it unwise to invalidate such amendatory language except under the most extreme circumstances. Hence, it becomes our duty to make every effort to resolve this dilemma in a way that will preserve the amendment, and give it that effect which we conclude was the desire of the electorate at the time of its adoption.

At the outset, we hold that in the language under consideration the word "period" refers to the entire phrase "two successive terms of four years." In order to utilize each word in the amendment consistently, as we must and including "successive," this construction becomes mandatory. Such an interpretation permits one who has served part of an unexpired term as Governor to still serve his or her "two successive terms of four years" thereafter, should the electorate be so inclined. It also permits persons to serve as many four-year terms as they are able to achieve, so long as not more than two of them are sought to be served successively. This interpretation permits, as the language now clearly allows, the serving of any number of successive terms, so long as not more than two of them are four years in duration. In short, all the variables and inconsistencies alluded to by both parties in briefs and oral arguments are resolved when this construction is placed upon the language concerned.

The circumstances surrounding the adoption of this amendment all point to the correctness of our conclusion. Had the people desired to reach the only logical result advocated by respondent, they would certainly have found the words of the Twenty-Second Amendment to the Constitution of the United States a compelling model: "No person shall be elected to the office of the President more

than twice * * *." The framers of this limitation upon executive tenure were unequivocal in their declaration. Yet, in our state, those who sought to confine executive tenure chose the language heretofore discussed. This constituted a distinct and clear departure from that which could have been easily stated if the desired result was to limit persons to two, four-year terms during their lifetime.[1] This is a departure to which we are duty bound to ascribe meaning.[2]

Respondent's contention that this cause is inappropriate to an action in mandamus is not well taken.

In view of all of the foregoing, and including the stipulation of facts entered into by and between the parties, relator's petition for a writ of mandamus is well taken, and an order shall issue commanding respondent to accept the filing of relator's declaration of candidacy and petition.

*Writ allowed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN and P. BROWN, JJ., concur.

CELEBREZZE and W. BROWN, JJ., dissent.

CORRIGAN, J., concurring. I am completely in agreement with the conclusion of the majority that the writ petitioned for should be allowed. However, I am qualmish concerning their suggestion that the language of the part of the 1954 amendment which we have under consideration is ambiguous. I fail to discern ambiguity in the provision of Section 2 of Article III of the Ohio Constitution, which reads:

---

[1] For example, the mere deletion of the word "successive" from the Ohio amendment would have achieved this objective.

[2] The parties speculate that the Twenty-Second Amendment was adopted as a result of the long, uninterrupted tenure of President Franklin D. Roosevelt. It is also speculation, without evidence of record, that the Ohio constitutional amendment before us was solely the result of the many, successive terms of Governor Frank J. Lausche, which took place during the consideration of the Ohio proposal.

"* * * No person shall hold the office of Governor for a period longer than two successive terms of four years."

It appears to this member of the court that this is language of simplicity, of directness and of efficaciousness. The Constitution does not say that no person shall hold the office of Governor for more than eight years; rather, it says, with pellucidity, that he shall not hold it for more than two terms in succession. It imposes a term limit, but not a time limit. "Period" is "a division of time in which something is completed"; "succession" applies to "things that follow each other in sequence," i. e., generally in order of time and without interruption. Webster's Third New International Dictionary.

Therefore, it follows that a person who has held the office of Governor for successive terms of four years (as in the instant case) is eligible to hold that office again after an interval of four years.

In 59 A. L. R. 2d 716, we find an annotation titled "Construction and effect of constitutional or statutory provisions disqualifying one for public office because of previous tenure of office." Section 7, at page 727, of this annotation is supportive of our interpretation of the Ohio constitutional provision we have under scrutiny herein. It reads, in part:

"* * * it appears that a prohibition against holding office for more than a specified number of consecutive terms does not result in permanent disability to hold such office when the permissible number of consecutive terms have been served, but only in a disability to be elected for the next successive term, which will disappear as soon as an intervening term has been served by another."

We find further, in Section 3, at page 721:

"Provisions in statutes and constitutions imposing restrictions upon the right of a person to hold office should receive a liberal construction in favor of the right of the people to exercise freedom of choice in the selection of officers."

It is interesting to note, by way of contrast, the posi-

106

tive terminology of the XXII Amendment to the United States Constitution, which reads:

"1. No person shall be elected to the office of President more than twice * * *."

This amendment became operative on March 1, 1951.

If it had been the intention to limit the number of terms for which a Governor of Ohio may be elected to two, when Ohio's Section 2 of Article III was amended in 1954, then this identical positive language of the first sentence in the XXII Amendment to the United States Constitution could well have been employed. Quite obviously, such was not the intention.