ETHEL S. LITTLETON, Plaintiff-Appellee, *v.* STATE OF HAWAII, Defendant-Appellant

(CIVIL NO. 50265)

ETHEL S. LITTLETON, Plaintiff-Appellant, *v.* CITY AND COUNTY OF HONOLULU, a municipal corporation, Defendant-Appellee

(CIVIL NO. 51345)

NO. 7232

DECEMBER 30, 1982

RICHARDSON, C.J.; RETIRED JUSTICE MARUMOTO IN PLACE OF LUM, J., DISQUALIFIED; CIRCUIT JUDGE TSUKIYAMA IN PLACE OF NAKAMURA, J., RECUSED; AND RETIRED JUSTICES OGATA AND MENOR, ASSIGNED TEMPORARILY

*Per Curiam.* This appeal involves actions for personal injuries brought by the plaintiff-appellant (hereinafter "Plaintiff") separately against the City and County of Honolulu (hereinafter "City") and the State of Hawaii (hereinafter "State"). Both causes of action were predicated upon the same set of facts and circumstances. Both were consolidated for trial.

On August 21, 1976, the plaintiff and her daughter and grandchild went to Ewa Beach Park to pick seaweed. After parking their car, the plaintiff walked through Ewa Beach Park and proceeded to the beach. She walked along the shoreline in the Diamond Head (east) direction, crossed the Honolulu boundary of the park, and continued on past three private homes fronting the ocean. After forty-five minutes of picking seaweed, the plaintiff, as she was facing the ocean, noticed a log

in front of her and realized it was on her foot. As she was attempting to free her right foot from under the log, a wave came along and pushed the log against her left leg, causing her to fall flat on her back. With the assistance of others, the plaintiff was able to draw herself away from the wash of the waves. She was later admitted to a hospital and subsequently operated on.

The plaintiff alleged in her complaint against the State that the waters where the accident occurred were under the care and control of the State pursuant to HRS § 266-1 (1968). She also alleged that the State had actual and constructive notice that logs were frequently and continuously in the waters. She further alleged:

Defendant, having a duty to do so, negligently failed to post signs warning of the danger or to remove logs and pilings from the waters and prevent their appearance or to in any other manner protect the safety of persons who were on the beach or in the waters.

The plaintiff alleged in her complaint against the City that the City "owned, maintained, operated and supervised" Ewa Beach Park. She also alleged that the City had actual and constructive knowledge that logs were frequently and continually in the water and on the beach. She further alleged:

The injury was caused by the negligence of defendant in failing to adequately maintain, operate and supervise Ewa Beach, including preventing logs and pilings from washing up on the beach and failing to warn persons using the beach of the dangerous condition that existed.

At the conclusion of plaintiff's case-in-chief the City moved for a directed verdict. The State filed a motion for an involuntary dismissal. The trial court found in the City's favor but denied the State's motion. After granting the City's motion for a directed verdict, the trial court continued with the trial against the State. It found the State to have been negligent and that its negligence was the proximate cause of the plaintiff's injuries. The plaintiff appeals from the judgment entered against her and in favor of the City, and the State appeals from the judgment entered against it and in favor of the plaintiff.

I.

In granting the City's motion for a directed verdict in the present case, the trial court made the following findings:

1. Ewa Beach Park is a public park owned, maintained and controlled by the Department of Parks and Recreation, City and County of Honolulu, with a parking lot furnished for the public's use.

2. On August 21, 1976, plaintiff went to Ewa Beach Park with her daughter to pick ogo. The daughter parked her car in the park's parking lot. No signs of any kind to ogo pickers were posted. Plaintiff proceeded through the park, going beyond the boundaries of the park, passing the lots of three private residences to an area fronting the Federal reservation.

3. At the time of the accident, plaintiff was standing below the high-water mark or vegetation line when she was struck by a telephone pole which was in the water and was being moved by the wash of the waves.

4. The City did not undertake a course of affirmative conduct to induce plaintiff to go beyond the park to pick ogo in an area under the control of the State where a dangerous condition might have existed. Therefore, the City owed no duty to plaintiff.

5. The evidence is undisputed that the log which struck plaintiff was afloat or being moved about by the action of the waves and had not come to a rest upon the beach. Even assuming that HRS §§ 46-12 and 62-34(9) impose a duty upon the City to clear debris off the beaches, and the log is considered a debris, and such duty extends beyond the boundaries of the park, the law does not impose upon the City a duty to clear debris when it is being washed about in the surf of the waves.

6. The State of Hawaii has care and control of all water and ocean below the high-water mark (or vegetation line) pursuant to HRS § 266-1. *Asato v. Matsuda,* 55 Haw. 334 (1974). The duty of ordinary care is solely owed by the State to plaintiff under the facts of this case.

II.

And in finding the State liable, the trial court entered the following pertinent findings of fact:

2. On August 21, 1976 at about 2:20 P.M. plaintiff, while in the ocean waters abutting the sandy beach known as Ewa Beach on the island of Oahu, State of Hawaii, was struck down and injured by a telephone pole in said waters that was carried into plaintiff by the wave action of the water.

\* \* \* \*

d. The telephone pole which pinned down Ethel S. Littleton in the sand and immediately thereafter struck her was dark in color and camouflaged by the debris and rubbish washed by the waves along the shoreline and in the waters, and was not seen by plaintiff prior thereto.

e. At the time Ethel S. Littleton was struck by the telephone pole, the tide was high and waves were moderately heavy.

f. Plaintiff was struck by said telephone pole while facing the waters abutting the sandy beaches and within a vicinity approximately ten feet of the far reaches of the waves and approximately twenty feet from the water's edge.

3. Said waters were, at all times relevant herein, under the care and control of the State of Hawaii pursuant to Chapter 266, Hawaii Revised Statutes.

4. At the location in said waters where Ethel S. Littleton was struck and injured by said telephone pole, the Ewa Beach Park and the abutting sandy beaches and shoreline were easily accessible to the public and regularly and heavily used by the public for ogo picking and water-related activities on August 21, 1976 and for a period in excess of fifteen years immediately prior thereto, and the State of Hawaii had knowledge of this fact.

5. Telephone poles, large logs, and other pilings were observed in said waters continually as often as two or three

times a week in the waters and on the beaches within the vicinity of where Ethel S. Littleton was struck by the telephone pole for a period exceeding seventeen years immediately prior to August 21, 1976 and the State of Hawaii had actual as well as constructive notice of this fact.

6. In *Asato v. Matsuda,* 55 Haw. 334 (1974), the State was sued and recovery allowed under facts almost identical to the facts herein. The State had knowledge of the dangerous condition of the waters adjacent to Ewa Beach Park.

7. Said poles, logs and pilings constituted an unreasonable danger to the safety of persons in said waters picking ogo and otherwise engaged in water-related activities.

\* \* \* \*

9. As a result of said negligence of the State of Hawaii, Ethel S. Littleton was struck by a telephone pole floating in said waters.

\* \* \* \*

14. Ethel S. Littleton had previously not been in the vicinity of the sandy beach known as Ewa Beach or its abutting ocean waters for a period exceeding three years prior to August 21, 1976, had never observed or been informed or warned of logs or wooden pilings floating in said waters before being struck by said telephone pole, had not seen said telephone pole in the waters before it pinned her helplessly in the sand by its weight, and Ethel S. Littleton was not contributorily negligent for her own safety and did not assume the risk of the injuries which she suffered. It then concluded as a matter of law:

1. The waters in which plaintiff Ethel S. Littleton was injured were, at all times relevant herein, under the care and control of the State of Hawaii, Chapter 266, Hawaii Revised Statutes.

2. The State of Hawaii had a duty of due care for the safety of persons in said waters.

III.

Because of the conclusive weight the trial court in the present case gave to *Asato v. Matsuda,* 55 Haw. 334, 519 P.2d 1240 (1974), in ruling as it did, and the probability that *Asato* will continue to play a significant role in future cases we will set out the trial court's pertinent findings in that case:

### FINDINGS OF FACT

1. That the plaintiffs Rose Asato and Yeisei Asato are residents of the City and County of Honolulu, State of Hawaii and the defendant State of Hawaii has consented to be sued and is subject to the jurisdiction of the Court under Chapter 662 of the Hawaii Revised Statutes, 1968.

2. That on July 8, 1969, plaintiff Rose Asato, while in ocean water abutting the sandy beach known as Ewa Beach or Puuloa Beach on Oahu, was struck down and injured by a large wooden piling floating in said waters and carried into her by the wave action of the water.

(a) The sandy beach known as Ewa Beach abuts the rear of Ewa Beach Park, a City and County Park, and extends a substantial distance beyond the prolongations of the Honolulu and Waianae boundary lines of the Park.

(b) To reach said sandy beach and its abutting waters, Rose Asato had walked through the Waianae portion of Ewa Beach Park following a course that had been and was commonly and heavily used by the public for said purpose.

(c) At the time Rose Asato was struck by said piling, she was in knee deep water, 10 to 17 feet from the water's edge and 10 to 20 feet outside of a prolongation of the Waianae boundary line of Ewa Beach Park.

(d) At the time Rose Asato was struck by said piling, the tide was midway between low tide and high tide.

(e) The wooden piling which struck Rose Asato was approximately 15 feet in length, 12 inches by 12 inches squared in shape and approximately 800 pounds in weight.

3. That said waters were at all times relevant herein under the care and control of the State of Hawaii, Section

266-1, Hawaii Revised Statutes, 1968.

4. That at the location in said waters where Rose Asato was struck and injured by said wooden piling, said waters were open to the public, easily accessible to the public and regularly and heavily used by the public for water related activities on July 8, 1969 and for a period in excess of 10 years immediately prior thereto, and that the State of Hawaii had knowledge of this fact.

5. That large logs and wooden pilings were observed in said waters "practically every day" (dep. of Frederick V. Kramer at P. 11), "continuously" (test. of Stanley Burden), "commonly" (test. of Harry Ching), "day-to-day" (test. of Robert Littleton), "two to three times a week" (test. of Raymond Neff) during a period exceeding 10 years immediately prior to July 9, 1969, and that the State of Hawaii had actual notice as well as constructive notice of this fact.

6. That said logs and pilings constituted an unreasonable danger to the safety of persons in said waters.

7. That the State of Hawaii, having a duty to do so, negligently failed to post signs warning of said danger or to remove logs and pilings from said waters or to determine the source of said logs and pilings and prevent their appearance or to in any other manner protect the safety of persons who were in said waters.

8. That as a result of said negligence, Rose Asato was struck by a large wooden piling floating in said waters.

\*   \*   \*   \*

11. That Rose Asato had previously not been in the vicinity of the sandy beach known as Ewa Beach or its abutting ocean waters more than once a year and had never observed or been informed of logs or wooden pilings floating in said waters prior to being struck by said piling on July 8, 1969, and that Rosé Asato was not contributorily negligent for her own safety and did not assume the risk of the injuries which she suffered.

\*   \*   \*   \*

## CONCLUSIONS OF LAW

1. That the waters in which plaintiff Rose Asato was injured were at all times relevant herein under the care and control of the State of Hawaii. Section 266-1, Hawaii Revised Statutes, 1968.

2. That the State of Hawaii had a duty of due care for the safety of persons in said waters.

3. That the State of Hawaii negligently breached its duty of due care.

4. That said negligence was a proximate cause of the injuries suffered by Rose Asato.

5. That Rose Asato was not contributorily negligent for her own safety and did not assume the risk of the injuries she suffered.

\* \* \* \*

On the basis of the foregoing findings, this court in a brief per curiam opinion affirmed the judgment against the State. *Asato v. Matsuda, supra.*

### IV.

We affirm the judgment against the State. The inference, if not the direct evidence, is clear that the telephone pole which struck and injured the plaintiff had its most recent origin in the abutting waters of the State.[1] Thus, if the State's negligence was not the sole proximate cause of the accident, it was at least a proximate cause of the plaintiff's injuries.[2]

---

[1] HRS § 266-1 provides:

Department of transportation; harbors; jurisdiction. All ocean shores below mean highwater mark, shore waters and navigable streams, and all harbors and roadsteads, and all harbor and waterfront improvements, belonging to or controlled by the State, and all shipping within the harbors, roadsteads, waters, and streams shall be under the care and control of the department of transportation.

[2] This is not to say, however, that the State is under a continuing duty to inspect and warn of dangerous unnatural conditions along every inch of Hawaii's coastlines. Such a requirement would place an unrealistic and intolerable burden upon the State. But on facts similar to Asato, or analogous thereto, the State does have a duty, at the very least, to warn the public of such dangerous unnatural conditions.

We are of the opinion, however, that the trial court erred in granting the City's motion for a directed verdict. Its reliance upon *Asato* was misplaced, essentially because the facts in the present case are significantly dissimilar. In *Asato,* the trial court made the following key findings of fact:

That on July 8, 1969, plaintiff Rose Asato, while in ocean water abutting the sandy beach known as Ewa Beach or Puuloa Beach on Oahu was struck down and injured by a large wooden piling *floating in said waters* and carried into her by the wave action of the water.

\* \* \* \*

At the time Rose Asato was struck by said piling, she was in *knee deep water,* 10 to 17 feet from the water's edge and 10 to 20 feet outside of a prolongation of the Waianae boundary line of Ewa Beach Park. [Emphasis added]

The *Asato* trial court then concluded:

That the waters in which plaintiff Rose Asato was injured were at all times relevant herein under the care and control of the State of Hawaii. Section 266-1, Hawaii Revised Statutes, 1968.

On the basis of the facts in *Asato,* which could support a finding that the plaintiff was injured while in ocean waters under the jurisdiction of the State, this court affirmed. Moreover, the only defendant in *Asato* was the State. The City was not made a party defendant in that case. In that regard, the following colloquy between court and counsel, found at page 264 of the official transcript of the proceedings, is particularly illuminating:

MR. ROSS [State's Counsel]: Well, it's obvious, Your Honor, you have decided that the state has some kind of duty in this case.

THE COURT: On the issue of liability, yes.

MR. ROSS: Yes.

THE COURT: Because the State has been sued—I'm not ruling on the City's responsibility at all. I'm ruling that the state, under these facts, have [sic] the obligation.

MR. ROSS: Because the parties did not bring in the right party and has subjected their counsel to a—

THE COURT: No, no. On the evidence there's been, perhaps, a failure on the part of the city to perform their duty and I say the higher degree belongs to the state. If the city won't do it, then I can hold the state, and that's my position.

In the present case, the jury could have found that both the plaintiff and the log were *on the beach* when she was struck by the log. The term "beach" means primarily the space between high and low water marks. *Brown v. Spreckels,* 18 Haw. 91 (1906), *aff'd,* 212 U.S. 208 (1909). The upper boundary of the public beach has subsequently been delineated by this court to be "along the upper reaches of the wash of waves, usually evidenced by the edge of vegetation or the line of debris." *In re Application of Ashford,* 50 Haw. 314, 315, 440 P.2d 76, 77 (1968); *County of Hawaii v. Sotomura,* 55 Haw. 176, 517 P.2d 57 (1973), *cert. denied,* 419 U.S. 872 (1974). Ballantine's Law Dictionary 1175 (3d ed. 1969) defines "shore" to mean: "The margin of the sea; that space of land which is alternately covered and left dry by the rising and falling of the tide; the space between high and low water mark." The terms "beach" and "shore" are thus used synonymously. *See* 39 Words and Phrases, *Shore* 293, 294 (Perm. ed. 1953). The testimony of the plaintiff and her daughter clearly show that both the plaintiff and the log could easily have been on and within the beach area where she sustained her injuries. For example, the plaintiff at one point testified:

Q. So were you in the water or out of the water when you were injured?

A. If I say I was in the water, I would be standing in the water all the time, but I was never in the water all the time. I was only in the water when the waves came up.

It was high tide at the time, and at the place where she was picking seaweed, some of the waves would wash up to her feet and some would go eight to ten feet past her.

The trial court in the present case was correct in its finding that "[t]he State of Hawaii has care and control of all water and ocean below the high-water mark (or vegetation line) pursuant to HRS § 266-1." Where it erred was in *a fortiori* holding that "[t]he duty of ordinary care is *solely owed* by the State to

plaintiff under the facts of this case." (Emphasis added) For it completely ignored the thrust and effect of HRS § 46-12 which expressly provides that "[t]he various counties shall be responsible for removing and clearing all seaweed, limu, and debris which are likely to create an unsanitary condition or to otherwise become a public nuisance from the shores and beaches situated within the respective counties[.]" *See also* HRS § 62-34(9).[3] The legislature emphasized the counties' responsibility in this regard when it said:

> *The purpose of this bill [H.B. 1103] as introduced was to assign to the state department of transportation the responsibility of removing limu, other seaweed, and debris which may cause unsanitary and obnoxious conditions on public beaches and shores.* The bill further provided that where the clearing of beaches and shores is a private responsibility, the State is empowered to enforce the fulfillment of this responsibility.

> *Your Committee has completely redrafted the bill to assign the responsibility hereinabove mentioned to the various counties* provided that to the extent any of the work is a private responsibility, such responsibility may be enforced by the county in lieu of the work being done at public expense. [1965 House Journal 750, Stand. Comm. Rep. No. 825.] (Emphasis added)

The legislature further observed:

> The beaches and shores are a valuable asset to the entire state and regular maintenance of such is vital to the tourist industry as well as to the recreational use of the residents. [1965 Senate Journal 1172, Stand. Comm. Rep. No. 845.]

---

[3] General powers. The board of supervisors of each county . . . shall, except as otherwise provided, have the following specific powers:

(9) Drainage of storm waters and removal of debris. To maintain channels, whether natural or artificial, including their exits to the ocean, in suitable condition to carry off storm waters; and to remove from the channels, and from the shores and beaches, any debris which is likely to create an unsanitary condition or to otherwise become a public nuisance; provided, that to the extent any of the foregoing work is a private responsibility the responsibility may be enforced by the county in lieu of the work being done at public expense.

We think, therefore, that the City has the sole responsibility to remove and clear all seaweed, limu, and debris "which are likely to create an unsanitary condition or to otherwise become a public nuisance" from those shores and beaches around Oahu which are likely to be used with some frequency by members of the public. So that if the City fails to perform this statutory duty and permits a condition to exist which, of itself, creates an unreasonable risk of harm, then the City may be held liable for any resulting injury. *Rothfuss v. Hamilton Masonic Temple Co.,* 34 Ohio St. 2d 105, 297 N.E.2d 105 (1973). Its liability would be predicated upon the breach of a statutory duty which leads to harm.

A nuisance has been variously defined to mean "that which unlawfully annoys or does damage to another, anything that works hurt, inconvenience, or damage, anything which annoys or disturbs one in the free use, possession, or enjoyment of his property or which renders its ordinary use or physical occupation uncomfortable, and anything wrongfully done or permitted which injures or annoys another in the enjoyment of his legal rights." 58 Am. Jur. 2d *Nuisances* § 1 at 555 (1971). As to what constitutes a public nuisance within the meaning of HRS § 46-12, we consider the following statement of the Kansas court to be generally applicable:

A nuisance, to be a public nuisance, must be in a public place, or where the public frequently congregate, or where members of the public are likely to come within the range of its influence; for, if the act or use of property be in a remote and unfrequented locality, it will not, unless malum in se, be a public nuisance. (citation omitted) . . . If the nuisance affects a place where the public has a legal right to go, and where the members thereof frequently congregate, or where they are likely to come within its influence, it is a public nuisance.[*City of Burlington v. Stockwell,* 5 Kan. App. 569, 573, 47 P. 988, 989-90 (1897).]

On the facts of the present case, the questions of whether the City allowed a nuisance to exist in breach of its statutory duty and whether its breach was a proximate cause of the plaintiff's injuries was properly a question for the jury and not for summary adjudication.

## V.

The plaintiff has also alleged responsibility on the part of the City by reason of its having induced, or by its conduct invited, its park patrons to make use of the adjoining beach areas in furtherance of their enjoyment of the City's own park premises.

In *Geremia v. State,* 58 Haw. 502, 573 P.2d 107 (1977), this court observed that a party will be liable in tort where he voluntarily undertakes a course of affirmative conduct intended to induce another to engage in an action, and creates a false appearance of safety upon which the other relies to his detriment. And it has also been held that an owner's duty to his invitees extends to such places in or about the premises as his invitees may reasonably be expected to go in the course of the visit. *Burns v. Bradley,* 120 N.H. 542, 419 A.2d 1069 (1980); *O'Brien v. Smith Brothers Engine Rebuilders, Inc.,* 494 S.W.2d 787 (Tenn. Ct. App. 1973); *Knight v. Moore,* 179 Va. 139, 18 S.E.2d 266 (1942); *Egede-Nissen v. Crystal Mountain, Inc.,* 93 Wash. 2d 127, 606 P.2d 1214 (1980); 1 J. Dooley, Modern Tort Law § 19.06 at 445 (1982); 2 F. Harper & F. James, Jr., The Law of Torts § 27.12 at 1485-86 (1956); W. Prosser, the Law of Torts 391 (4th ed. 1971); Restatement (Second) of Torts § 332 comment 1 (1965); 62 Am. Jur. 2d *Premises Liability* § 46 (1972).

It would be unfair and unjust for the City to be charged with responsibility for the safety of every invitee who might choose to wander along the beach well beyond the geographical beach limits of the park itself. At the same time, it would be unreasonable for the City to expect that those to whom it invited to use its park and beach facilities would confine their activities strictly within the beach and waters along and adjacent to the park's beach frontage. In any event, whether the City induced, or by its conduct invited,[4] the plaintiff to use the

---

[4] In this connection, it has been said:

An invitation may be implied from a continued and general custom in using the premises by the patrons of the business. The nature of the use and the extent of the premises covered by the implied invitation to use may be determined by the continued and general custom of the patrons of the place. [McKinney v. Adams, 68 Fla. 208, 225-26, 66 So. 988, 992 (1944).]

adjoining beach areas is a question of fact which must be determined by the jury from the circumstances. If it did, then the City would have been required to exercise reasonable care for her safety. At the very least, the City would then have been under a duty to warn the plaintiff of dangerous conditions which were not known to her or obvious to persons of ordinary intelligence, and which either were known or in the exercise of reasonable care ought to have been known to the City.[5] *Tarshis v. Lahaina Investment Corp.,* 480 F.2d 1019 (9th Cir. 1973); *Friedrich v. Department of Transportation,* 60 Haw. 32,·586 P.2d 1037 (1978).

We affirm the judgment against the State and reverse and remand for new trial on the plaintiff's complaint against the City.

*Richard Marshall (Dan T. Kochi* on the brief), Deputies Attorney General for State of Hawaii, Defendant-Appellant.

*Wesley F. Fong (Edmund Lee* with him on the brief), Deputies Corporation Counsel for City & County of Honolulu, Defendant-Appellee.

*Herbert Takahashi* and *Lowell K. Y. Chun-Hoon (King, Nakamura & Takahashi* of counsel) for Plaintiff-Appellee and Plaintiff-Appellant.

## DISSENTING OPINION OF RICHARDSON, C.J.

I respectfully dissent. I would hold, as a matter of law, that neither the State of Hawaii nor the City and County of Honolulu is liable for the plaintiff's injuries. As I stated in my dissenting opinion in *Asato* v. *Matsuda,* 55 Haw. 334, 519 P.2d 1240 (1974), a case based on similar facts: "We are ill advised to make the State of Hawaii an insurer of those who are injured by the hazards of the beach." *Id.* at 334, 519 P.2d at 1240. This

---

[5] Had the plaintiff been injured in waters along the park's beach frontage, this principle would then have clearly applied. Kaczmarczyk v. City & County of Honolulu, 65 Haw. ___, 656 P.2d 89 (1982). In the present case, the plaintiff was injured in the adjoining beach areas.

statement applies with equal force to the City in this case, since my overriding concern in *Asato* was not with which governmental body has jurisdiction over the situs of an accident, but with the inherent dangerousness of the ocean and beaches and the sheer impracticality of having to warn the public of the particular dangers of each and every beach in Hawaii. *Id.* at 334-35, 519 P.2d at 1240-41. *Cf. Pickering* v. *State,* 57 Haw. 405, 409, 557 P.2d 125, 128 (1976) ("The State is not the insurer of the personal safety of every member of the motoring public.").

It is not clear to me from today's decision or from our statutes[1] what "care" is "due" beachgoers from the State and City. Is it the duty to simply warn the public of potential dangers, or the duty to actually clear the oceans and beaches of all possible hazardous matter? Indeed, what is to prevent the State or City from taking upon itself the duty to close certain beaches altogether? Such precautionary measures, we would say, go too far,[2] as well we should, since our shore areas help supply us with food and minerals and our beaches provide one of the primary sources of recreation on these islands. In fact, this court has long striven to ensure that beaches are open and available to the public. *See generally County of Hawaii* v. *Sotomura,* 55 Haw. 176, 517 P.2d 57 (1973), *cert. denied,* 419 U.S. 872 (1974); *In re Application of Ashford,* 50 Haw. 314, 440 P.2d 76 (1968). Yet the unwarranted closure of beaches is not unforeseeable given the spectre of State/City liability every time a person steps into the ocean or a public beach. It is precisely for this reason that other ocean-bordered states have enacted legislation immunizing public entities from liability for injuries caused by the natural conditions of beaches and bodies of water. *See, e.g.,* Cal. Gov't Code § 831.2 (West 1963); N.J. Stat. Ann. § 59:4-8 (West 1972).

---

[1] *See, e.g.,* HRS §§ 46-12, 62-34(9), and 266-1.

[2] The closure of a beach would, of course, be warranted in certain extraordinary situations, such as where toxic chemicals have leaked into the swimming waters or where the presence of sharks poses an abnormally high risk to beachgoers.

We must recognize that this case involves a naturally occurring and recurring problem: the presence of logs in the waters off Ewa Beach. *Cf. County of Sacramento* v. *Superior Court,* 89 Cal. App. 3d 216, 152 Cal. Rptr. 391 (Ct. App. 1979) (accident caused by presence of large "snag" in stream consisting of uprooted trees was the result of a natural condition for which County was not liable). There is no evidence in the record indicating where these logs originated. Under these facts, I believe the critical question is not whether the plaintiff had actual or constructive knowledge of the presence of the specific danger at this particular beach, but rather, whether a reasonable person should be aware that oceans and beaches in general contain numerous hazardous matter and conditions. This question, I feel, must be answered in the affirmative: to an even greater extent than other relatively high risk activities such as playing contact sports and driving on our highways, entering the ocean involves dangers which most of us are aware of but nonetheless willingly accept because the benefits outweigh the risks. I would thus conclude that neither the State nor the City owed a duty of due care to the plaintiff, and so neither can be held liable for her injuries.