**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000670
23-DEC-2024
08:02 AM
Dkt. 149 SO**

CAAP-21-0000670

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


KRB, LLC, a Hawaii limited liability company,
Plaintiff-Appellee/Cross-Appellant, v.
STATE OF HAWAII, DEPARTMENT OF LAND AND NATURAL RESOURCES;
DAWN N.S. CHANG, in her capacity as the Director of the
Department of Land and Natural Resources;
STATE OF HAWAII, DEPARTMENT OF AGRICULTURE; SHARON HURD,
in her capacity as the Director of the Department of Agriculture;
STATE OF HAWAII, DEPARTMENT OF HEALTH; KENNETH S. FINK, M.D.,
in his capacity as the Director of the Department of Health,
Defendants-Appellants/Cross-Appellees, and
JOHN DOES 1-20; JANE DOES 1-20; DOE PARTNERSHIPS 1-20;
DOE CORPORATIONS 1-20; and DOE GOVERNMENTAL UNITS 1-100,
Defendants


APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CIVIL NO. 5CC151000127)


SUMMARY DISPOSITION ORDER
(By: Leonard, Acting Chief Judge, Hiraoka and Wadsworth, JJ.)

Defendants-Appellants/Cross-Appellees State of Hawai'i,

Department of Land and Natural Resources, Dawn N.S. Chang, in her

capacity as the Director of the Department of Land and Natural

Resources, State of Hawai'i, Department of Agriculture, and

Sharon Hurd, in her capacity as the Director of the Department of

Agriculture,[1] (collectively, the **State**) appeal from the May 5, 2023 Amended Final Judgment (**Amended Judgment**), entered by the Circuit Court of the Fifth Circuit (**Circuit Court**).[2]  The State challenges the October 27, 2021 Findings of Fact [(**FOFs**)], Conclusions of Law, and Order Re:  Attorney's Fees and Costs (**Attorney's Fees Order**).[3]

Plaintiff-Appellee/Cross-Appellant KRB, LLC, a Hawaiʻi limited liability company (**KRB**), cross-appeals and challenges the Circuit Court's October 27, 2021 Findings of Fact, Conclusions of Law, and Order (**Order After Trial**).

The State raises two points of error on appeal, contending that the Circuit Court erred in entering the Attorney's Fees Order because: (1) sovereign immunity bars an award of attorney's fees and costs in this case; and (2) KRB was not entitled to fees and costs under the private attorney general doctrine.

KRB raises four points of error, contending that the Circuit Court erred when it: (1) failed to conclude that the State created a public nuisance; (2) did not apply the public trust doctrine and conclude that the State violated the protections of the Hawaiʻi Constitution article XI, sections 1 and 7; (3) did not recognize KRB's water rights to use the

---

[1]     As the current directors of their departments, pursuant to Hawaiʻi Rules of Appellate Procedure Rule 43(c)(1), Dawn N.S. Chang and Sharon Hurd are substituted for the previously-named parties to this case.

[2]     The Honorable Randal G.B. Valenciano presided.

[3]     The Amended Judgment was entered pursuant to an April 14, 2023 Order for Temporary Remand.  The State's Notice of Appeal from the Attorney's Fees Order was filed on November 24, 2021.

Kainahola Stream (**Stream**) to cultivate taro; and (4) ordered an inadequate remedy.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve the parties' points of error as follows, beginning with the issues raised by KRB:

KRB's Appeal

(1)  KRB argues that the Circuit Court erred in not finding that the State created a public nuisance.  KRB points to the Circuit Court's findings that the State has not provided for any maintenance of the Stream, and that as a result, the Stream is not in a condition suitable to carry off storm waters, and the lack of Stream maintenance has caused an unsanitary condition upon KRB's property.

The Hawaiʻi Supreme Court has defined a nuisance, stating:

> A nuisance has been variously defined to mean "that which unlawfully annoys or does damage to another, anything that works hurt, inconvenience, or damage, anything which annoys or disturbs one in the free use, possession, or enjoyment of his property or which renders its ordinary use or physical occupation uncomfortable, and anything wrongfully done or permitted which injures or annoys another in the enjoyment of his legal rights."

Littleton v. State, 66 Haw. 55, 67, 656 P.2d 1336, 1344 (1982) (quoting 58 Am. Jur. 2d Nuisances § 1 at 555 (1971)).

The supreme court has defined a public nuisance as follows:

> A nuisance, to be a public nuisance, must be in a public place, or where the public frequently congregate, or where members of the public are likely to come within the range of its influence; for, if the act or use of property be in a remote and unfrequented locality, it will not, unless malum

3

> in se, be a public nuisance. If the nuisance affects a place where the public has a legal right to go, and where the members thereof frequently congregate, or where they are likely to come within its influence, it is a public nuisance.

Id., at 67, 656 P.2d at 1344-45 (citations omitted).

In a pretrial summary judgment order, the Circuit Court concluded that the State was not in compliance with Hawaiʻi Revised Statutes (**HRS**) § 46-11.5 (2012),[4] and this failure to comply had created a private nuisance to KRB. Although KRB argues that the Circuit Court erred in not finding, after trial, that the State also created a public nuisance, KRB's argument is devoid of citation to findings or evidence in the record demonstrating the public nature of the nuisance. We decline to adopt KRB's rationale that because the Stream is public waters, the Circuit Court erred in failing to find that the State's lack of maintenance constitutes a public, as opposed to a private, nuisance in this case.

---

[4]     HRS § 46-11.5 provides:

   **§ 46-11.5  Maintenance of channels, streambeds, streambanks, and drainageways.**  Notwithstanding any law to the contrary, each county shall provide for the maintenance of channels, streambeds, streambanks, and drainageways, whether natural or artificial, including their exits to the ocean, in suitable condition to carry off storm waters; and for the removal from the channels, streambeds, streambanks, and drainageways and from the shores and beaches any debris which is likely to create an unsanitary condition or otherwise become a public nuisance; provided that to the extent any of the foregoing work is a private responsibility the responsibility may be enforced by the county in lieu of the work being done at county expense, and any private entity or person refusing to comply with any final order issued by the county shall be in violation of this chapter and be liable for a civil penalty not to exceed $500 for each day the violation continues; provided further that it shall be the responsibility of the county to maintain all channels, streambeds, streambanks, and drainageways unless such channels, streambeds, streambanks, and drainageways are privately owned or owned by the State, in which event such channels, streambeds, streambanks, and drainageways shall be maintained by their respective owners.

(2)   KRB argues that the Circuit Court erred in not concluding that the State violated its duties under the public trust doctrine.  KRB references FOFs 15-19, which include findings, *inter alia*, that the State's property is overgrown with hau bush, guinea grass, and other vegetation that obstructs the flow of the Stream.  KRB argues that the State violated the public trust doctrine by failing to maintain the "purity and flow" of the Stream and by failing to protect the use of the Stream for the cultivation of taro.

The State, in turn, argues that the public trust doctrine does not obligate the State to maintain the artificial flow of water created by Lihue Plantation's past dredging and that the restoration of the natural wetlands should take priority over the maintenance of a watercourse altered for private interests.

The supreme court summarized the scope and enumerated four protected trust purposes as follows:

> "The public trust doctrine applies to all water resources without exception or distinction." [In re Water Use Permit Apps. (Waiāhole I)], 94 Hawaiʻi [97,] 133, 9 P.3d [409,] 445 [(2000)].
>
> We have recognized four types of water uses, or "purposes," protected by the state water resources trust: (1) maintenance of waters in their natural state; (2) domestic water use, in particular, drinking water; (3) the exercise of traditional and customary Native Hawaiian water rights; and (4) the reservation of water enumerated by the Water Code. Kauai Springs [Inc. v. Plan Comm'n,] 133 Hawaiʻi [141,] 172, 324 P.3d [951,] 982 [(2014)] (first citing Waiāhole I, 94 Hawaiʻi at 136-37, 9 P.3d at 448-50; and then citing [In re Waiʻola O Molokaʻi, Inc.], 103 Hawaiʻi [401,] 431, 83 P.3d [664,] 694 [(2004)]).  We rejected, on the other hand, private commercial uses as not protected by the public trust.  Waiāhole I, 94 Hawaiʻi at 138, 9 P.3d at 450.  We have acknowledged the public trust "may allow grants of private interests in trust resources under certain circumstances"; nonetheless, it has "never been understood to safeguard rights of exclusive use for private commercial gain."  Id.

5

Surface Water Use Permits Apps., Integration of Appurtenant Rts. & Amends. To Interim Instream Flow Standards, 154 Hawaiʻi 309, 339, 550 P.3d 1167, 1197 (2024).

On the record before us, we conclude that there is substantial evidence in the record to support the Circuit Court's findings and conclusions that, in sum, rejected KRB's conflation of the State's violation of its duties under HRS § 46-11.5 and a violation of the public trust. We cannot conclude that the Circuit Court clearly erred in rejecting KRB's public trust doctrine claims.

(3) KRB argues that the Circuit Court erred by not recognizing its water rights under the Kuleana Act of 1850, specifically the right to use the Stream to cultivate taro. In essence, KRB contends that it is entitled to water rights under both riparian and appurtenant doctrines, relying on Reppun v. Bd. of Water Supply, 65 Haw. 531, 656 P.2d 57 (1982).

In general, "our local system of water rights is 'based upon and is an outgrowth of ancient Hawaiian customs and methods of Hawaiians in dealing with the subject of water.'" Id. at 539, 656 P.2d at 63 (quoting Territory v. Gay, 31 Haw. 376, 395 (1930)). In discussing the Great Mahele, the supreme court explained:

> HRS § 7-1 was originally enacted in 1850 as section 7 of what has come to be known as the Kuleana Act. The first six sections of the Act enabled the common people of Hawaii to secure fee simple title to the lands they actually cultivated. The seventh section contained the rights that were to accompany a commoner's tenancy.

Id. at 549, 656 P.2d at 69.

In <u>McBryde Sugar Co. v. Robinson</u>, the supreme court considered the point at which Hawai'i law overturned prior misinterpretations of Hawaiian traditions regarding water rights. 54 Haw. 174, 186-87, 504 P.2d 1330, 1339 (1973); <u>Reppun</u>, 65 Haw. at 545, 656 P.2d at 67 ("In <u>McBryde</u> meaning was given to [riparian rights] for the first time when we ruled that the [Kuleana Act], at the time of its passage, imposed the 'natural flow' doctrine of riparianism upon the waters of the Kingdom."). In <u>McBryde</u>, the supreme court rejected the concept of private ownership of water, holding, *inter alia*, that the Kuleana Act imposed the "natural flow" doctrine of riparianism upon the waters of the State. 54 Haw. at 197-98, 504 P.2d at 1344. The supreme court described riparian rights as "the right [of a riparian owner] to use water flowing [in a natural watercourse] without prejudicing the riparian rights of others and the right to the natural flow of the stream without substantial diminution in the shape and size given it by nature." <u>Id.</u> at 198, 504 P.2d at 1344. Accordingly, the court in <u>Reppun</u> held "riparian rights in Hawai'i are a product of the people's statutory rights to 'flowing' and 'running'" water embodied in the Kuleana Act. 65 Haw. at 549, 656 P.2d at 69.

In addition, the supreme court recognized rights appurtenant to the land based on the historical use of water attached at the time of its conversion to fee simple ownership. <u>Reppun</u>, 65 Haw. at 551, 656 P.2d at 71. As such, when land allotted by the Mahele was confirmed to the awardee by the Land Commission or when Royal Patent was issued based on such award,

such conveyance of the parcel of land carried with it the appurtenant right to water for domestic purposes such as taro growing.  Id.

The supreme court, in addressing the issue of riparian rights, has held that landowners are entitled to use water from a stream for reasonable purposes, such as irrigation for taro farming.  Id. at 553-54, 656 P.2d at 72.  In Reppun, the supreme court moved away from the strict "natural flow" doctrine, instead adopting the "reasonable use" theory, stating:

> [W]e are convinced the exclusive purpose of the statutory imposition of riparian rights in this jurisdiction was to enable tenants of ahupuaas to make productive use of their lands and that our interpretation of these rights must proceed in conformity with this purpose.  And while the statute creating riparian rights may indeed have been intended to engraft the "natural flow" version of riparianism onto the waters of our land as found in McBryde, the continued satisfaction of the framers' intent requires that the doctrine be permitted to evolve in accordance with changing needs and circumstances.

Id. at 553, 656 P2.d at 72.

Accordingly, the supreme court held that "a riparian owner must demonstrate actual harm to his own reasonable use of those waters."  Id.

KRB argues that the State's failure to maintain the Stream obstructed its reasonable use of the water.  The State counters that while the Stream's condition might slow drainage during stormwater events, the flooding does not impede KRB's ability to grow taro, as found by the Circuit Court.  The State also argues that KRB failed to present sufficient evidence regarding the natural flow of the stream.  In essence the Circuit Court, as the trier-of-fact, found that KRB's claim for riparian rights falls short under the reasonable use standard.

8

Although KRB argues that the condition of the Stream impairs its ability to cultivate taro, the Circuit Court found, based on credible witness testimony, that KRB could still grow taro despite the present conditions.  Specifically, the testimony of KRB's kalo expert, Wayne Tanji, confirmed that flooding only affected taro cultivation if waters remained above the tops of the plants for more than twenty-four hours, a condition not shown to have occurred here.  KRB's tenant, Ben Pierce (who lives on the property and raises livestock there), testified that flooding on the property occurred infrequently and drained within hours.  KRB invites us to give different weight to various evidence than did the Circuit Court.  However, as the supreme court has often stated, "it is within the province of the trier of fact to weigh the evidence and to assess the credibility of the witnesses, and this court will refrain from interfering in those determinations[.]"  Ass'n of Apartment Owners of Wailea Elua v. Wailea Resort Co., Ltd., 100 Hawaiʻi 97, 117-18, 58 P.3d 608, 628-29 (2002) (internal quotation marks and citation omitted).  We conclude that the Circuit Court did not clearly err when it found KRB has not demonstrated that the State's lack of maintenance has caused KRB to lose income from being unable to grow taro on its property.

KRB further argues that the overgrowth of hau bush and the resulting excess and unusable water impedes its historical and present-day taro cultivation, thus violating its appurtenant rights.  The State argues that KRB failed to quantify the amount

of water necessary for taro cultivation, which is essential to establish a violation of appurtenant rights here.

The supreme court in Reppun held that, while the landowner has the burden of establishing the quantity of water to which they were entitled, a means of approximation based on historical use can be used. 65 Haw. at 554, 656 P.2d at 72. Here, there is no dispute that appurtenant water rights attached to KRB's property, as these rights were conveyed through Land Commission Awards and a Royal Patent. Nevertheless, the burden was on KRB to demonstrate at least an approximate amount of water historically used, and a measurable deprivation of that right, which it failed to do. See id. at 554, 656 P.2d at 72. Based on the evidence before the Circuit Court, we cannot conclude that the Circuit Court clearly erred in rejecting KRB's claim that the State violated its riparian and appurtenant rights.

(4) KRB argues that the Circuit Court erred in determining the proper remedy because the court did not (a) specifically order the State to remove the hau bush to allow the Stream to utilize its "historical channel," which would create "proper conditions" for KRB to cultivate taro, and (b) award damages to KRB.

With respect to KRB's request for injunctive relief, the Order After Trial states, in relevant part:

> 5. [KRB's] claim for injunctive relief is granted and the State is hereby ordered to comply with HRS § 46-11.5.
>
> 6. No later than October 5, 2021, the State must present this Court with a plan as to how it will come into compliance with HRS § 46-11.5.

An injunction is insufficient when the trial court fails to "mold its decree and the relief granted to satisfy the requirements of the case and conserve the equities of the parties[,]" in violation of Hawaii Rules of Civil Procedure (**HRCP**) Rule 65(d).[5] <u>Moffat v. Speidel</u>, 2 Haw. App. 334, 335, 631 P.2d 1205, 1206 (1981), (citing <u>Fleming v. Napili Kai, Ltd.</u>, 50 Haw. 66, 430 P.2d 316 (1967)); <u>see also</u> <u>Ching v. Case</u>, 145 Hawaiʻi 148, 184, 449 P.3d 1146, 1182 (2019).

At the risk of speculating here, it appears that the October 27, 2021 Order After Trial may have been formulated at an earlier date, with the intention that a more specific form of relief would arise out of the plan that the State was ordered to provide to the Circuit Court by October 5, 2021. However, the record does not appear to contain such a plan (and the parties have not referenced one), and no more specific injunctive relief was crafted by the Circuit Court. We decline to hold that the Circuit Court erred by failing to specifically order the State to remove the hau bush to allow the Stream to utilize its "historical channel," as there is insufficient factual or legal grounds presented to provide such relief on appeal. We nevertheless conclude that the injunctive relief set forth in the

---

[5]     HRCP Rule 65 provides, in relevant part:

**Rule 65.   INJUNCTIONS.**

. . . .

     **(d)   Form and scope of injunction or restraining order.** Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained[.]

Order After Trial does not comport with HRCP Rule 65(d) and that this case must be remanded to the Circuit Court for entry of a more specific order describing the relief, in reasonable detail, to satisfy the requirements of the case and conserve the equities of the parties.

KRB also argues that the Circuit Court erred in denying the request for money damages because it did not properly weigh the testimony of witnesses who testified as to KRB's inability to grow taro, monetary losses, and the overgrowth on the State's property as the cause.[6] We conclude, however, that the Circuit Court's decision to deny an award of damages was based on its factual determinations, which were supported by credible testimony presented at trial. See, e.g., Quedding v. Arisumi Bros., Inc., 66 Haw. 335, 339, 661 P.2d 706, 709-10 (1983) (holding that the amount of a damages award is a matter exclusively within the province of the trier of fact); Schefke v. Reliable Collection Agency, Ltd., 96 Hawai'i 408, 436, 32 P.3d 52, 80 (2001) (concluding that a jury verdict of punitive damages must be "palpably not supported by the evidence" to warrant reversal). Therefore, we reject KRB's argument that it is entitled to appellate relief with respect to its request for damages.

The State's Appeal

As stated in the Attorney's Fees Order, the Circuit Court found that KRB was entitled to attorney's fees and costs

---

[6] KRB's request for damages, as described in its answering brief, was based entirely on its alleged inability to grow taro.

based on the private attorney general doctrine. The State argues that the Circuit Court erred in awarding attorney's fees and costs because (a) sovereign immunity bars an award of attorney's fees and costs here; and (b) even if the State had waived its immunity with respect to KRB's claims, KRB is not entitled to fees and costs under the private attorney general doctrine.

"'[T]he sovereign State is immune from suit for money damages, except where there has been a clear relinquishment of immunity and the State has consented to be sued.'" Kaleikini v. Yoshioka, 129 Hawaiʻi 454, 467, 304 P.3d 252, 265 (2013) (quoting Bush v. Watson, 81 Hawaiʻi 474, 481, 918 P.2d 1130, 1137 (1996)). "[A]n award of costs and fees to a prevailing party is inherently in the nature of a damage award." Sierra Club v. Dep't of Transp. of State of Haw. (**Sierra Club II**), 120 Hawaiʻi 181, 226, 202 P.3d 1226, 1271 (2009) (quoting Fought & Co., Inc. v. Steel Eng'g & Erection, Inc., 87 Hawaiʻi 37, 51, 951 P.2d 487, 501 (1998)). Therefore, an award of attorney's fees and costs must be grounded in "a clear relinquishment of the State's immunity[.]" Id. (citation omitted).

KRB argues that the State waived its sovereign immunity for KRB's "tort-based claims" pursuant to HRS chapter 662, as well as HRS §§ 661-1(1) (Supp. 2023) and 46-11.15.

HRS § 661-1(1) waives the State's sovereign immunity with respect to claims against the State "founded upon any statute."[7] The limited waiver in HRS § 661-1(1) "does not itself

---

[7]     HRS § 661-1 provides, in relevant part:

(continued...)

create a substantive right enforceable against the State of Hawaiʻi for money damages." Garner v. State, Dep't of Educ., 122 Hawaiʻi 150, 160, 223 P.3d 215, 225 (App. 2009). The underlying statute must clearly and unequivocally mandate a waiver. See Taylor-Rice v. State, 105 Hawaiʻi 104, 109-10, 94 P.3d 659, 665-66 (2004) (holding that the State is immune from money damages unless there is a "clear relinquishment" of sovereign immunity and consent to be sued); see also Kalima v. State, 111 Hawaiʻi 84, 108-09, 137 P.3d 990, 1014-15 (2006).

Accordingly, as applicable to this case, there must be a clear relinquishment of the State's immunity in HRS § 46-11.5. We consider this issue in light of the supreme court's application of these principles.

In Sierra Club II, the Department of Transportation (**DOT**) raised the defense of sovereign immunity against a claim for attorney's fees and costs. 120 Hawaiʻi 181, 221, 202 P.3d 1226, 1266 (2009). The supreme court concluded that the DOT

----

(...continued)

§ 661-1 **Jurisdiction.** The several circuit courts of the State and, except as otherwise provided by statute or rule, the several state district courts, subject to appeal as provided by law, shall have original jurisdiction to hear and determine the following matters, and, unless otherwise provided by law, shall determine all questions of fact involved without the intervention of a jury:

(1) All claims against the State founded upon any statute of the State; upon any rule of an executive department; upon article I, section 20, of the Hawaii State Constitution; or upon any contract, expressed or implied, with the State, and all claims that may be referred to any such court by the legislature; provided that no action shall be maintained, nor shall any process issue against the State, based on any contract or any act of any state officer that the officer is not authorized to make or do by the laws of the State, nor upon any other cause of action than as herein set forth[.]

waived its sovereign immunity through specific language in HRS § 343-7 (1993).[8]  Id. at 226-28, 202 P.3d at 1271-73.  The court determined that HRS § 343-7 constituted a waiver of sovereign immunity because it imposed specific requirements and procedures on the DOT, provided for judicial review of the DOT's decisions, and created a private right of action, allowing individuals and groups like Sierra Club to challenge the DOT's actions in court.  Id. at 227-28, 202 P.3d at 1272-23.  The supreme court emphasized that while the HRS § 343-7 does not explicitly waive sovereign

---

[8]     HRS §343-7 stated:

     §343-7 Limitation of actions.   (a) Any judicial proceeding, the subject of which is the lack of assessment required under section 343-5, shall be initiated within one hundred twenty days of the agency's decision to carry out or approve the action, or, if a proposed action is undertaken without a formal determination by the agency that a statement is or is not required, a judicial proceeding shall be instituted within one hundred twenty days after the proposed action is started.  The council or office, any agency responsible for approval of the action, or the applicant shall be adjudged an aggrieved party for the purposes of bringing judicial action under this subsection. Others, by court action, may be adjudged aggrieved.

     (b)  Any judicial proceeding, the subject of which is the determination that a statement is required for a proposed action, shall be initiated within sixty days after the public has been informed of such determination pursuant to section 343-3.  Any judicial proceeding, the subject of which is the determination that a statement is not required for a proposed action, shall be initiated within thirty days after the public has been informed of such determination pursuant to section 343-3.  The council or applicant shall be adjudged an aggrieved party for the purposes of bringing judicial action under this subsection. Others, by court action, may be adjudged aggrieved.

     (c)  Any judicial proceeding, the subject of which is the acceptance of an environmental impact statement required under section 343-5, shall be initiated within sixty days after the public has been informed pursuant to section 343-3 of the acceptance of such statement. Affected agencies and persons who provided written comment to such statement during the designated review period shall be adjudged aggrieved parties for the purpose of bringing judicial action under this subsection; provided the contestable issues shall be limited to issues identified and discussed in the written comment[.]

immunity, the clear intent and purpose of the statute is to subject the DOT to judicial oversight and accountability. Id. at 227-28, 202 P.3d at 1271-72.

In Kaleikini, the supreme court held that HRS § 6E-13(b)(2009)[9] does not contain a waiver of the State's immunity. 129 Hawai'i at 468, 304 P.3d at 266. The court distinguished HRS § 343-7 from HRS § 6E-13(b), noting that:

> a waiver of the State's sovereign immunity cannot similarly be implied from HRS § 6E-13(b). This is because HRS § 6E-13(b)(2009) allows suit to be brought only for restraining order or injunctive relief . . . It is well settled that a provision allowing for declaratory or injunctive relief is not a waiver of the State's sovereign immunity, but rather an exception to the sovereign immunity doctrine for which no waiver is necessary.

Id. (citing Sierra Club II, 120 Hawai'i at 229 n.30, 202 P.3d at 1274 n.30)).

While HRS § 46-11.5 imposes a duty on the State to maintain certain areas, the statute does not contain any language expressly or impliedly waiving the State's sovereign immunity or authorizing the award of damages. Like in Kaleikini, where the supreme court determined that HRS § 6E-13 did not waive the State's sovereign immunity because it only provided for injunctive relief, we conclude here that HRS § 46-11.5 does not

---

[9] HRS § 6E-13 (2009) provides, in relevant part:

**§ 6E-13 Injunctive relief**

. . . .

(b) Any person may maintain an action in the trial court having jurisdiction where the alleged violation occurred or is likely to occur for restraining orders or injunctive relief against the State, its political subdivisions, or any person upon a showing of irreparable injury, for the protection of an historic property or a burial site and the public trust therein from unauthorized or improper demolition, alteration, or transfer of the property or burial site.

16

include a clear waiver of immunity for, *inter alia*, attorney's fees.  See id.  Accordingly, we cannot conclude that HRS § 661-1(1) supports an award of attorney's fees and costs in this case.

The State also argues that KRB is not entitled to an award pursuant to HRS 662-12 (2016)[10] because KRB recovered no monetary damages for tort claims against the State.

Under HRS § 662-12, attorney's fees are permissible when a plaintiff obtains a judgment under the State Tort Liability Act, but attorney's fees must be paid out of the recovery and are limited to 25% of the amount recovered.  Here, the Circuit Court did not award money damages, instead granting injunctive relief.  Because there was no monetary recovery, the Circuit Court had no "amount recovered" from which to calculate or pay attorney's fees.  Accordingly, we conclude that HRS § 662-12 does not support an award of attorney's fees and costs against the State in this case.

The Circuit Court nevertheless awarded attorney's fees and costs under the private attorney general doctrine.  We need not reach the State's arguments that the Circuit Court erred in so doing because absent a clear waiver of sovereign immunity, attorney's fees and costs cannot be awarded against the State

---

[10]    HRS § 662-12 provides:

**§ 662-12  Attorney's fees.**  The court rendering a judgment for the plaintiff pursuant to this chapter or the attorney general making a disposition pursuant to section 662-11 may, as a part of such judgment, award, or settlement, determine and allow reasonable attorney's fees which shall not, however, exceed twenty-five per cent of the amount recovered and shall be payable out of the judgment awarded to the plaintiff; provided that such limitation shall not include attorney's fees and costs that the court may award the plaintiff as a matter of its sanctions.

under the private attorney general doctrine. <u>See</u>, <u>e.g.</u>, <u>Nelson v. Hawaiian Homes Comm'n</u>, 130 Hawaiʻi 162, 169, 307 P.3d 142 (2013) (application of the private attorney general doctrine is subject to the defense of sovereign immunity). Accordingly, we conclude that the Circuit Court erred in awarding KRB attorney's fees and costs based on the private attorney general doctrine.

For these reasons, the Circuit Court's May 5, 2023 Amended Judgment is vacated. The Circuit Court's October 27, 2021 Order After Trial is affirmed in part and vacated in part, as set forth above. The Circuit Court's October 27, 2021 Attorney's Fees Order is reversed. This case is remanded to the Circuit Court for further proceedings consistent with this Summary Disposition Order.

DATED: Honolulu, Hawaiʻi, December 23, 2024.

On the briefs:

Mark M. Murakami,
Joanna C. Zeigler,
Clint K. Hamada,
(Damon Key Leong Kupchak
 Hastert)
for Plaintiff-Appellee/Cross-
Appellant.

Andrew D. Goff,
Bryan C. Yee,
Deputy Attorneys General
Department of the Attorney
General
for Defendants-Appellants/
Cross-Appellees

/s/ Katherine G. Leonard
Acting Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge