**Saul VIESS, et al., Plaintiffs,**

v.

**SEA ENTERPRISES CORP., dba Ocean Activities Center, County of Maui, Inter-Continental Hotels Corp. (Hawaii) dba Hotel Inter-Continental Maui; Wailea Development Co., and Does 2–20, Defendants.**

**Civ. No. 82–0529.**

United States District Court, D. Hawaii.

April 30, 1986.

Steven J. Trecker, Christopher P. McKenzie, Honolulu, Hawaii, for plaintiffs.

Sydney K. Ayabe, Jeffrey H.K. Sia, Libkuman, Ventura, Ayabe & Hughes, Honolulu, Hawaii, for Sea Enterprises Corp., dba Ocean Activities Center.

H. Rodger Betts, Corp. Counsel, James B. Takayesu, Deputy Corp. Counsel, Maui County, Wailuku, Maui, Hawaii, for Maui County.

Jeffrey S. Portnoy, Cades Schutte Fleming & Wright, Honolulu, Hawaii, for Inter-continental Hotels Corp. (Hawaii), dba Hotel Inter-Continental Maui.

Walter Davis, Honolulu, Hawaii, for Wailea Development Co.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

PENCE, District Judge.

Defendant Wailea Development Company's motion for summary judgment came on for hearing before this court on March 19, 1986. All parties, with the exception of the County of Maui, were represented by counsel. The court, having considered the motion for summary judgment, the extensive memoranda filed, and the arguments of counsel, finds as follows:

### FACTS [1]

This action for tort damages arises from a serious personal injury which occurred in the ocean waters off Wailea Beach, Maui, on October 1, 1980. Plaintiff Saul Viess, aged 64, with his wife, plaintiff Mildred Viess, and another vacationing couple, drove from the Royal Kahana Condominium, where they were staying, to go on a sightseeing excursion that morning. When they reached the Hotel Inter-Continental Maui, they stopped for lunch. After a brief discussion with a member of the hotel

---

**1.** The "Facts" are assumed as true, solely for the purpose of this decision.

staff, who suggested they might wish to go swimming off Wailea Beach before lunching at the hotel, plaintiffs and their companions rented a modified form of surf board, known as a "boogie board", from defendant Sea Enterprises Corp., which ran a concession stand on the beach. The four went swimming and took turns using the board.

While some question exists as to the surf conditions at the time, the group had been on the beach and swimming for about an hour when Mr. Viess entered the water with the boogie board for the third time. He was alone in the water and none of the other members of the party saw the ensuing accident. According to his own deposition testimony, Mr. Viess, while facing the shore, was struck from behind by a large wave which lifted him up and threw him on his head. The impact fractured his neck and rendered him quadriplegic.

Defendants in this action are: Sea Enterprises Corp., dba Ocean Activities Center ("OAC"), operator of the beach concession; County of Maui ("Maui"); Intercontinental Hotels Corp. (Hawaii) dba Hotel Inter-Continental Maui ("IHC"); Wailea Development Co. ("Wailea"), owner of the shoreline property above the high-tide mark where the accident occurred; and Does 2–20. (A map of the area is attached as Appendix A.) Wailea has moved for summary judgment, asserting that it is shielded from liability by the Hawaii recreational use statute.

## DISCUSSION

### A. *Landowner's Duty of Care*

On April 3, 1969, Hawaii's "Richardson" Supreme Court, in *Pickard v. City and County of Honolulu*, 51 Haw. 134, 452 P.2d 445 (1969), abolished the common law distinction between the duty owed by landholders to licensees from that owed invitees on the premises. The court stated:

We believe that the common law distinctions between classes of persons have no logical relationship to the exercise of reasonable care for the safety of others.

We therefore hold that an occupier of land has a duty to use reasonable care for the safety of all persons reasonably anticipated to be upon the premises, regardless of the legal status of the individual.

Defendant Wailea admits that plaintiffs crossed its land to reach the water.

All Hawaii beaches are owned by the state, and the public has a right of access to the beaches. Hawaii Rev.Stat. Chapter 115 (1976 and Supp.). In *Kaczmarczyk v. City and County of Honolulu*, 65 Haw. 612, 615, 656 P.2d 89 (1982), where the city operated a public park along the beach, the Hawaii Supreme Court held that a like duty of care by the city extended to those swimming in the waters along its property's beach frontage.

### B. *Hawaii Rev.Stat. Chapter 520*

On July 14, 1969, the Governor's approval of Act 186 (now H.R.S. § 520) made effective Hawaii's 1969 legislature's intent to encourage owners of land "to make their land and water areas available to the public for recreational purposes by limiting [the owners'] liability toward persons entering thereon for such purposes." Hawaii Rev. Stat. § 520–1.

"Recreational purpose" is defined to include, without limitation, "... fishing, swimming, boating, ... [and] water skiing ...." Hawaii Rev.Stat. § 520–2(3). Surfing—and the related activity of using a boogie board—is not mentioned explicitly, but both activities demand swimming.

Defendant Wailea claims that Chapter 520 relieves it from any liability in the instant case.

When SB 56 (now Chapter 520) was being considered by the legislature in 1969, the Senate committee stated "that the purpose of the bill was as set forth in" paragraph 1 (§ 520–1). The House Standing Committee Report 760 (Judiciary) commented:

Enactment of this bill would relieve the owner of land of his duty to keep the premises safe for entry or use by others

for recreational purposes. A person who uses such property for recreational purposes would not be given the status of an invitee or licensee, and hence the landlord would not be liable for injuries to such persons.

In *Dilatori v. Haas*, Civil No. 73–3839, in 1974, where plaintiff, a sky diver, had fallen onto power lines erected across the property of defendant Mokuleia Associates, et al., this court granted summary judgment to the landowner on the basis that H.R.S. § 520–3 exempted the landowner from liability.[2] In *Jones v. Halekulani Hotel, Inc.*, the plaintiff dove off of a seawall, the top of which was used by the public as a right of way along the defendant hotel adjoining the beach and was injured upon striking rocks in shallow water. In the district court, Judge King, in 1975, granted summary judgment for the defendant on the grounds that (1) a public easement along the wall had been created by prescription, and (2) furthermore, defendant was relieved of any liability by H.R.S. § 520–3. Judge King also held that § 520–3 was not unconstitutional. On appeal, in *Jones v. Halekulani, Inc.*, 557 F.2d 1308 (9th Cir.1977), the circuit court sustained the summary judgment on Judge King's ground (1), *supra*, and did "not reach the issue of the constitutionality" of § 520–3. The Hawaii Supreme Court has never considered the applicability or the effect of the Landowners Liability Law.

Plaintiffs claim that Chapter 520 is irrelevant because the plaintiffs were not engaging in recreational activity *on* defendant's land. This position borders on the frivolous. Plaintiffs have named Wailea as a party defendant solely because (a) they own the land above the beach, and (b) the Hawaii Supreme Court, in *Kaczmarczyk v. City and County of Honolulu, supra*, stated that shoreline property owners owed a common law duty of care to those using the beaches in front of their property. If, as a matter of law, the Hawaii Supreme Court's statement in *Kaczmarczyk* is construed as going beyond the facts of that case, then *Kaczmarczyk* is squarely contrary to the stated purpose of Chapter 520, viz:

> **SECTION 1. Purpose.** The purpose of this Act is to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes.

Out of the first paragraph of p. 615 of *Kaczmarczyk*, wherein is discussed the duty of a *municipality* to exercise reasonable care in the maintenance and use of its park and facilities, holding that the city, as an occupier of the park land, must "exercise all reasonable care for the safety of all persons known to be, or reasonably anticipated to be, upon its premises", the plaintiffs have taken the sentence, "[w]here the premises front upon the ocean, this responsibility extends to those swimming in the waters along the property's beach frontage" to be the rule of law which should control this case.[3] The plaintiffs, however, overlooked the second paragraph, which continues:

> In line with the foregoing principles of municipal tort liability, the plaintiffs have alleged negligence on the part of the City, (1) in failing to give adequate warning to the deceased of dangerous surf conditions; (2) in failing to adequately equip and train the lifeguards stationed at the park; and (3) in failing to provide adequate staffing for the lifeguard station at the park.
>
> Undoubtedly, the City would have had a duty to warn users of Ehukai Beach Park of extremely dangerous conditions

---

**2.** This court also ordered, under F.R.Civ.P. Rule 11, that the plaintiff's attorney pay costs and $500 to the defendant property holders for filing a frivolous action.

**3.** The Hawaii Supreme Court cited *Tarshis v. Lahaina Investment Corp.*, 480 F.2d 1019 (9th Cir.1973) as supporting this statement. Nothing in *Tarshis* supports the statement. This judge should know. I sat on the *Tarshis* case from its inception, through its summary judgment for the defendant, its reversal, and the trial wherein the defendant was held not liable. See discussion of *Tarshis, infra*, at 231.

in the ocean along its beach frontage.... [underscoring added]

It would be preposterous to hold a landowner liable for injuries to anyone using the beach and ocean in front of his land—an area solely owned and controlled by the state and county—when under Chapter 520, if he had owned and controlled that beach and water he would have no liability at all.

## C. *Exceptions to Landowner Immunity*

Immunity under Chapter 520 is not absolute. The statute sets out, in § 520–5, the activities which will expose a landowner to tort liability even if he makes his land available for recreational use in compliance with the statute.

### 1. *The "Charge" Exception*

A landowner will not be protected by the Landowners Liability Statute if the charges for admission or access to his land. Hawaii Rev.Stat. § 520–4. Defendant Wailea states that it has never charged anyone for access to Wailea Beach. (Affidavit of H. Robert Hoy in support of defendant's Motion at ¶ 8; Affidavit of Bill Hogarty in support of defendant's Motion at ¶ 3.) Plaintiffs have submitted no probative evidence to the contrary.

Plaintiffs maintain, however, that defendant Wailea has received economic benefit from allowing people to use the beach fronting its land. There is, apparently, an interrelationship of business entities linking defendant Wailea, through parent corporations, with defendant IHC. The hotel, in turn, leases the beach concession (including the rental of boogie boards) to defendant OAC.

Defendant Wailea has not denied the relationships among these entities. This court cannot find that corporate relationships as exist here raise an issue of fact as to Wailea's immunity under Chapter 520. Defendant Wailea has been sued as an independent entity, the owner of the undeveloped land mauka of the accident. The fact that its parent corporation (if that is indeed the true relationship between the entities) also has an interest in the separate parcel of land on which defendant IHC is located does not confer any real economic benefit on Wailea itself flowing out of the passing of people over a portion of its land to reach the adjoining public beach.

Moreover, the exact language of the statute is that liability is not limited "where the owner of land *charges* the person or persons who enter and go on the land for recreational use thereof ...." § 520–5(2) (emphasis supplied). "Charge" is defined in § 520–2 as "the admission price or fee asked in return for invitation or permission to go upon the land." § 520–2(4).

This exception is much narrower than the general provision found in other recreational use statutes, which states that an owner may not escape liability where he receives consideration as a result of entry to his property. Such phrasing might permit the finding of liability where the defendant obtains some less obvious benefit from plaintiff's use of his land.

The Hawaii statute, in contrast, speaks only to the explicit *quid pro quo* arrangement whereby a landowner conditions admission to the land upon payment of a fee. In the instant case, the facts are undisputed that, from the time plaintiffs arrived at the hotel grounds to the time of the accident, the only fee solicited was from defendant OAC for the rental of the boogie board. That fee was in no way a prerequisite by Wailea for use of the public beach. Plaintiffs admit that defendant Wailea made no direct charge upon plaintiffs in return for access to the beach. The court, therefore, finds that the "charge" exception to Chapter 520 immunity does not apply to defendant Wailea.

### 2. *The "Willful/Malicious" Exception*

The only other potential exception to the limitation of liability identified by plaintiffs as a reason for denying the motion for summary judgment is § 520–5(1). That provision imposes liability for "willful failure to guard or warn against a dangerous condition, use, or structure which the own-

er knowingly creates or perpetuates ...." The basis of plaintiffs' contention is that "defendant Wailea knew, or had reason to know, that ['tourists who were basically inexperienced with Hawaii's surf'] would use the beach on days when the surf was dangerous unless otherwise warned." (Supplemental Memorandum in Opposition at 11.)

Plaintiffs do not allege that defendant Wailea created or maintained any artificial hazard in the beach or ocean. Their argument is simply that the failure to warn of the surf, in itself, "perpetuated" a dangerous condition. The court finds such reasoning to be specious. Defendant Wailea perpetuated nothing; the beach and the ocean, and its surf, were never touched or changed by Wailea. Wailea did not in any way contribute to or perpetuate the existence of the ocean's wave conditions.

Defendant Wailea argues that the mere failure to warn of a dangerous natural condition, as plaintiffs urge in the instant case, can never amount to malice or willfulness under § 520–5(1). Defendant points to several cases, which apply recreational use statutes from other states, as supporting such a proposition. *See Jones v. United States*, 693 F.2d 1299, 1304 (9th Cir. 1982) (failure to place signs or ropes around tree at bottom of snow slope used for sledding not willful or wanton); *Orawsky v. Jersey Cent. Power and Light Co.*, 472 F.Supp. 881, 884 (E.D.Pa.1977) (failure to warn against danger presented by shallow water not willful or malicious); *Odar v. Chase Manhattan Bank*, 138 N.J.Super. 464, 351 A.2d 389, 392 (1976) (failure to prevent trespassers from entering property to skate on thin and dangerous ice not willful or malicious).

Plaintiffs refer to several cases which they contend refute the proposition that failure to warn of natural dangers can never rise to the level of willfulness or malice. The court finds the facts in those cases to be distinguishable from those in the suit at bar. Most of plaintiffs' cases involve conditions more properly classified as "artificial" than as "natural." The defendants

therein either created or perpetuated dangerous conditions by building structures or failing to remove objects. *See Von Tagen v. United States*, 557 F.Supp. 256 (N.D.Cal. 1983) (maintenance of highway); *Stephens v. United States*, 472 F.Supp. 998, 1016 (D.Ill.1979) (submerged tree stumps allowed to remain in lake); *Miller v. United States*, 442 F.Supp. 555, 561 (D.Ill.1976) (government controlled depth of lake by lowering water level through spillway); *Burnett v. City of Adrian*, 414 Mich. 448, 326 N.W.2d 810 (1982) (submerged structure in artificial lake); *New v. Consol. Rock Products Co.*, 171 Cal.App.3d 681, 217 Cal.Rptr. 522 (1985) (berm placed across road above cliff in gravel quarry); *Lostritto v. Southern Pac. Transp. Co.*, 73 Cal.App.3d 737, 140 Cal.Rptr. 905 (1977) (railroad trestle used by swimmers for diving).

Those cases which consider the failure to warn of admittedly natural conditions can also be distinguished. In *Simpson v. United States*, 652 F.2d 831 (9th Cir.1981), plaintiff fell through the ground into scalding water in a national park. The Ninth Circuit held that whether the failure to warn was willful or malicious was a question of fact for the jury. However, the statute at issue, Cal. Civil Code § 846, is not identical to Hawaii Rev.Stat. § 520–5(1). The California statute provides that landowners must warn of any "dangerous condition, use, structure, or activity" on the premises. Hawaii's limiting language, "which the owner knowingly creates or perpetuates," is not included. Natural dangers in California therefore remain among the conditions of which an owner must warn. Similarly, *Mandel v. United States*, 719 F.2d 963 (8th Cir.1983), and *Van Gordon v. Portland General Electric Co.*, 294 Or. 761, 662 P.2d 714 (1983), involve statutes which, by their broad language, include liability for failure to warn of natural dangers. The same is not the law in Hawaii.

As noted above, court involvement with Hawaii Rev.Stat. Chapter 520 has been limited. The only relevant reported decision

even discussing the statute is *Jones v. Halekulani Hotel, Inc.*, 557 F.2d 1308 (9th Cir.1977). In that case, a teenage boy dove off a seawall into shallow water and fractured his neck. He brought an action against the hotel whose land bordered the beach where the seawall was located, claiming failure to warn. Affirming an order of summary judgment on grounds that an easement across the seawall had been created, the court nevertheless commented in dicta that where the landowner did not create the dangerous condition, or alter it or put it to special use, he had no duty to plaintiff and could not be held liable for the latter's injuries. *Id.* at 1311.

The language of the Hawaii statute supports such a reading. For liability to arise, a landowner must willfully or maliciously fail to warn against a dangerous condition which he knowingly perpetuates. Here, defendant Wailea can in no way be said to have perpetuated the condition of the ocean surf. Failure to warn could only be considered willful or malicious if defendant had an independent duty to warn.

Other cases cited by plaintiffs in their opposition papers are also inapposite. Plaintiffs contend that "prevailing and unanimous case law" imposes a duty on Wailea to warn of dangerous surf conditions. They cite *Kaczmarczyk v. City and County of Honolulu*, 65 Haw. 612, 656 P.2d 89 (1982), and *Littleton v. State of Hawaii*, 66 Haw. 55, 656 P.2d 1336 (1982), in support of this proposition. In both cases, though, the defendants were government entities, not private landowners. Chapter 520 specifically states that it does not apply to "lands owned by the government." Hawaii Rev.Stat. § 520-2(1). Plaintiffs have evidently recognized the potential liability of the County of Maui, which is named as a defendant in this litigation.

Plaintiffs also rely heavily on *Tarshis v. Lahaina Investment Corporation*, 480 F.2d 1019 (9th Cir.1973). In *Tarshis*, plaintiff, a guest of defendant's hotel, did not see warning signs posted by the hotel concerning dangerous surf. She saw, but did not understand, red warning flags placed along the beach. Shortly after entering the water, she was injured when a large wave threw her on the sand. The Court of Appeals reversed the granting of summary judgment, on the grounds that there was an issue of material *fact* (whether the average person would have perceived the dangerous surf conditions).[4] The Landowners Liability Law was never discussed.

Plaintiffs would have this court hold that the issue of whether certain conduct is willful should be left to the jury. If the degree of defendant's willfulness were a legitimate issue, a factual finding by the court on a motion for summary judgment would, of course, be improper.

Here, the only alleged willfulness is Wailea's failure to warn (defendant admits that it did not warn), arguing that such failure was willful, in light of Wailea's presumed knowledge of prior accidents from and in the surf at Wailea Beach. This court finds that, in the circumstances of the instant case, the number of prior accidents on the beach, and whether or not Wailea knew of them, are irrelevant issues. The "willfulness" exception of Chapter 520 is not intended to include the mere failure to warn of the per se dangerous natural conditions always existing in ocean waters.

By exempting the government from coverage under Chapter 520, the legislature appears to have placed responsibility for beach users in these circumstances solely within the public sector. The ocean, and the beach up to the high water mark, is not within Wailea's control. By enacting Chapter 520, the legislature relieved private shorefront landowners from the obligation of keeping a constant lookout for anyone using beaches or ocean in front of their property. The state or counties have assumed the responsibility for guarding against dangerous surf conditions. Defendant Wailea, simply by virtue of its ownership of land abutting the beach, had no more duty than did any other Maui

---

4. On trial, the jury found for the defendant.

landowners to advise visitors on the beach of the ever present dangers incident to entering ocean waters.

This court refuses to hold that, in spite of Chapter 520, private landowners are uniformly liable for surf and ocean conditions over which they have absolutely no control. *See also, Dzula, et al. v. The Kohala Corporation, et al.,* Civil No. 79–29EJS (D.Haw.1980), *aff'd mem.,* 672 F.2d 921 (9th Cir.1982).

ACCORDINGLY, because plaintiffs have raised no genuine issue of fact, and because defendant Wailea is entitled to prevail as a matter of law, IT IS HEREBY ORDERED that the motion for summary judgment be, and the same is GRANTED.

## APPENDIX A