Charles G. BROWN, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Charles Brown, Plaintiff,

v.

City and County of Honolulu,
Defendant.

Nos. Civ.00–00007 ACK,
Civ.00–00476 ACK.

United States District Court,
D. Hawaii.

June 28, 2001.

---

Ian L. Mattoch, Law Offices of Ian Mattoch, Honolulu, HI, for Plaintiff in No. 00–CV–7.

Robert P. Morean, Wes Porter, Office of the United States Attorney, Honolulu, HI, for Defendant in No. 00–CV–7.

Charles G. Brown, Mililani, HI, Pro se, in No. 00–CV–476.

David Z. Arakawa, Office of Corporation Counsel–Honolulu, Joachim P. Cox, Wes Porter, Office of the United States Attorney, Honolulu, HI, for Defendant in No. 00–CV–476.

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KAY, District Judge.

### BACKGROUND

This case stems from a bicycle accident involving Charles G. Brown ("Plaintiff"). On Wednesday, July 8, 1998, at approximately 7:30 a.m., Plaintiff was traveling to work by bicycle. Plaintiff traveled on the Pearl Harbor Bike Path ("Bike Path"), located along the ocean side of Kamehameha Highway connecting Pearl Harbor and the West Loch area.

Plaintiff contends that the Bike Path is owned by the State of Hawaii. *See* Brown Decl. ¶ 1; Plaintiff's Concise Statement ¶ 3 and Ex. AB. The United States purports to be the landowner of the parcel of land containing the Bike Path and the site of the accident. *See* Pacht 2nd Decl. ¶ 4 and Ex. A (attached to Reply). Both the Plaintiff and the United States, however, agree that the United States granted an easement to the City and County of Honolulu for the construction, use, operation, repair, and replacement of a public bike path, developed into the Bike Path at issue. *See* U.S. Concise Statement, Ex. E; Pacht Decl. at 2; Pl. Concise Statement ¶ 10.

On the morning of July 8, 1998, Naval Station Pearl Harbor's Morale, Welfare, and Recreation Department ("MWR") sponsored the "RIMPAC '98 5 Mile and 1 Mile Runs" (the "race"), a foot running race to take place on the Bike Path. The race was scheduled to begin at 7:00 a.m. for the 5 mile run and at 8:00 a.m. for the 1 mile run. The 5 mile race was to start at the entrance to the Bike Path located near the intersection of Salt Lake Boulevard and Kamehameha Highway, proceed northwest along the Bike Path as it traces the shoreline until McGrew Loop, then turn around and return on the same path, finishing at the same point where the race began. *See* U.S. Concise Statement, Ex. K. On the morning of the race, the paved course was dry and in excellent condition, and the weather was clear and sunny. Gouveia Decl. ¶ 10. Approximately 150 runners participated in the race. *Id.* at ¶ 7.

According to the United States, and uncontroverted by Plaintiff, each participant in the race was issued a number on a paper that they were required to pin to their shirt during the event, MWR posted signs at all major entry points to the Bike Path to alert public patrons that the event was taking place, and MWR provided a safety talk to the participants of the race, including a warning to watch out for public patrons either running or biking on the Bike Path and to stay on the right side of the Bike Path. Gouveia Decl. ¶¶ 9, 13–14. The United States also alleges, and Plaintiff does not dispute, that during the race, MWR had personnel in front of the race,

at the blind spots on the Bike Path, at some of the major points of entry onto the Bike Path, on bicycles behind the race, and had two hospital corpsman at the finish line of the race in case anyone needed medical attention. Gouveia Decl. ¶¶ 15–18.

On the morning of July 8, 1998, during the race, Plaintiff was in an accident on the Bike Path. According to Plaintiff, a woman (presumably a race participant) running west bound stepped around another runner to pass that runner.[1] When the woman did this, according to Plaintiff, she stepped in front of Plaintiff (who was traveling east bound at approximately 8 MPH on his bicycle), on Plaintiff's side of the Bike Path. This caused Plaintiff to swerve to the right to avoid hitting her. Plaintiff hit a patch of dirt, causing his back wheel to skid out from under him and causing him to land on his left elbow and slide to the ground. Plaintiff states that there are three witnesses to the accident (himself plus the two runners), however no witnesses other than Plaintiff have been identified. The runners did not stop to aid Plaintiff. *See* U.S. Concise Statement, Ex. M (claim form signed by Plaintiff). On the day of the race, no MWR personnel were aware of an accident between a bicyclist and a race participant. Gouveia Decl. ¶ 18.

As a result of the accident, Plaintiff alleges that he suffered a broken and dislocated left elbow, abrasions on the left leg, left hip, and left shoulder, and a cut on the right middle finger. U.S. Concise Statement, Ex. M (claim form signed by Plaintiff). Plaintiff alleges that the dislocation of the left elbow has resulted in permanent disability. *Id.* Plaintiff also claims property damage to the bicycle he was riding and its accessories. *Id.*

Plaintiff owns three bicycles, two of which are used on weekends only, for pleasure riding. The third bicycle, which Plaintiff was riding at the time of the accident, is used only for commuting to work and other work purposes. This bicycle is equipped with a mirror for riding in rush hour traffic, fenders for riding in rain, lights for when Plaintiff has to work late, road style tires, and carrying bags for transporting work clothing and papers. Brown Decl. ¶ 7.

Plaintiff filed the instant action against the United States on January 4, 2000 alleging negligence. Complaint ¶¶ 12–14, 16.[2] Plaintiff seeks special damages of an undetermined amount, general damages of two million dollars, and attorneys' fees and costs. Compl. p. 5. On July 12, 2000, Plaintiff's separate action against the City and County of Honolulu was removed to this court. On September 19, 2000, the parties stipulated to consolidate the two cases.

The United States filed the instant motion for summary judgment and accompanying concise statement on May 15, 2001, seeking summary judgment that the Hawaii Recreational Use Statute bars Plaintiff's claims against it. On May 31, 2001, the City and County of Honolulu filed a statement of no position. Plaintiff filed an opposition and concise statement on June 1, 2001. The United States filed a reply

---

1. These were the only two runners approaching Plaintiff, and he first noticed them approximately 20 to 30 feet away. Brown Depo. 46–48 (attached to Pl. Concise Statement). Whether these runners were in fact race participants is not at issue in this motion for summary judgment, however, the Court notes that no evidence of their participation in the race has been presented.

2. The Complaint contains two separate counts, the first titled "Negligence" and the second titled "Violation of Statute." The Court interprets both counts to be for negligence, as the second count repeatedly refers to Defendant's "careless and negligent manner" in violating unspecified laws and regulations, and alleges that Plaintiff's injuries are a "direct and proximate result of the above-mentioned negligence." Complaint ¶¶ 17–19.

on June 7, 2001. Without leave of the Court and contrary to L.R. 7.4, Plaintiff filed a "Reply to United States' Reply" on June 13, 2001 ("Plaintiff's supplemental filing" or "Pl.Supp."). With permission from the Court, on June 15, 2001 the United States filed a response to Plaintiff's supplemental filing. The Court held a hearing on the motion on June 18, 2001.

### STANDARD

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The standard for summary adjudication is the same. *See State of Cal. v. Campbell,* 138 F.3d 772, 780 (9th Cir. 1998). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *See id.* at 322, 106 S.Ct. 2548. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the non-moving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *See id.* at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *See British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson,* 477 U.S. at 250–51, 106 S.Ct. 2505.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

Indeed, "if the factual context makes the nonmoving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *See T.W. Elec. Serv.,* 809 F.2d at 630–31.

## DISCUSSION

Under the Federal Tort Claims Act ("FTCA"), the United States is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. *See also Proud v. United States*, 723 F.2d 705, 706–707 (9th Cir.1984) (applying Hawaii Recreational Use Statute to determine that the U.S. was not liable in tort under the FTCA because a private individual would not have been liable under the same circumstances).

The Hawaii Recreational Use Statute ("HRUS") was enacted by the Hawaii legislature to "encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability toward persons entering thereon for such purposes." Haw.Rev. Stat. § 520–1. HRUS limits both the duty of care owed by an owner and the owner's liability when that owner holds land open for recreational purposes. Specifically, "an owner of land owes no duty of care to keep the premises safe for entry or use by others for recreational purposes," or to give any warning of a dangerous condition to persons entering for recreational purposes or to assist recreational users. Haw.Rev.Stat. § 520–3.

Where an owner of land invites or permits any person to use the property, without charge, for *recreational purposes*, that owner's liability is limited,[3] subject to three exceptions. Haw.Rev.Stat. § 520–5 states that HRUS does *not* limit liability:

(1) For *wilful or malicious failure* to guard or warn against a dangerous condition, use, or structure which the owner *knowingly* creates or perpetuates and for wilful or malicious failure to guard or warn against a dangerous activity which the owner knowingly pursues or perpetuates.

(2) For injury suffered in any case where the owner of land *charges* the person or persons who enter or go on the land for the recreational use thereof, except any consideration received by the owner for such lease shall not be deemed a charge within the meaning of this section.

(3) For injuries suffered by a *house guest* while on the owner's premises, even though the injuries were incurred by the house guest while engaged in one or more of the activities designated in [HRUS].

Haw.Rev.Stat. § 520–5 (emphasis added).

"Recreational purpose" as required by the statute "includes but is not limited to any of the following, or any combination

---

**3.** Haw.Rev.Stat. § 520–4 limits liability as follows:

a) Except as specifically recognized by or provided in section 520–6, an owner of land who either directly or indirectly invites or permits without charge any person to use the property for recreational purposes does not: (1) Extend any assurance that the premises are safe for any purpose; (2) Confer upon the person the legal status of an invitee or licensee to whom a duty of care is owed; (3) Assume responsibility for, or incur liability for, any injury to person or property caused by an act or omission or commission of such persons; and (4) Assume responsibility for, or incur liability for, any injury to person or persons who enter the premises in response to an injured recreational user.

(b) An owner of land who is required or compelled to provide access or parking for such access through or across the owner's property because of state or county land use, zoning, or planning law, ordinance, rule, ruling, or order, to reach property used for recreational purposes, or as part of a habitat conservation plan, or safe harbor agreement, shall be afforded the same protection as to such access, including parking for such access, as an owner of land who invites or permits any person to use that owner's property for recreational purposes under subsection (a).

thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites." Haw.Rev.Stat. § 520–2. A "recreational user" is "any person who is on or about the premises that the owner of the land either directly or indirectly invites or permits, without charge, entry onto the property for recreational purposes." *Id.* "Charge means the admission price or fee asked in return for invitation or permission to enter or go upon the land." *Id.*

The United States seeks summary judgment that Plaintiff's claims against it are barred by the HRUS. Plaintiff argues that the HRUS does not bar its claims against the United States because the United States is not the landowner of land where the accident occurred, the United States receives financial benefit from the Bike Path, Plaintiff was engaged in non-recreational use of the Bike Path when the accident occurred, and the United States was engaged in wilful illegal activity. Opp. 39.

**A. The United States Is the Landowner**

■ Plaintiff alleges that the State of Hawaii, not the United States, is the owner of the land on which the accident occurred. As evidence, Plaintiff submits two maps from the Tax Maps Bureau with his opposition and supplemental filing. Plaintiff's maps are hard to read at best and, other than a hand-drawn line by Plaintiff, do not demark the Bike Path. *See* Pl. Concise Statement, Ex. AB; Pl.Supp., Ex. A. Plaintiff's supplemental filing also contains photographs of the Kamehameha Highway off ramp to Moanalua Highway and the Bike Path at and around the accident site. Pl.Supp., Ex. B. *See also* Brown Decl. ¶ 1 (Plaintiff determined location of the accident point by taking measurements around the accident location and plotting them on the tax map).

The United States submitted a document, dated March 16, 1951, that grants, conveys, sells, transfers and assigns the tract of land owned by the Oahu Railway and Land Company to the United States. *See* Pacht 2nd Decl., Ex. A (attached to Reply). In its supplemental filing, the United States submits a declaration of Ronald Darlington, a professional land surveyor employed by the Pacific Division, Naval Facilities Engineering Command as the command Cartographer within the Real Estate Department. Mr. Darlington does not dispute Plaintiff's photographs of the accident site but states that the accident site is on United States property. Mr Darlington's declaration is based on a digital orthophoto map that conforms to National Map Accuracy Standards, and depicts the exact location of the Bike Path and of the United States' property line. U.S.Supp., Ex. A. The United States also submits a declaration of Dennis Pacht, civilian employee of the Pacific Division of Navel Engineering Facilities Command, stating that "the United States, and not the State of Hawaii, is the owner of the site of the accident during July of 1998 and through today." Pacht 2nd Decl. ¶ 4; Pacht 3rd Decl. ¶ 8.

The Court finds that Plaintiff has not raised a genuine issue of fact as to the owner of the land in question. The evidence submitted by the United States conclusively demonstrates that the United States is the owner of the land on which the accident occurred.

**B. There Is No "Charge" for Using the Bike Path**

■ HRUS's limitation of liability does not apply where the "owner of the land charges the person" who enters the land for recreational use. Haw.Rev.Stat. § 520–5(2). The HRUS defines charge as "admission price or fee asked in return for

invitation or permission to enter or go upon the land." Haw.Rev.Stat. § 520-2.

The United States alleges that there is no charge, admission price, or user fee of any kind to use the Bike Path and that the United States receives no commercial benefit whatsoever from the Bike Path. Sayers Decl. ¶¶ 3-5. Plaintiff alleges that the United States Navy receives a financial benefit from the Bike Path when its members commute by bicycle on the Bike Path, reducing the need for parking spaces at the Pearl Harbor Naval Station. Brown Decl. ¶ 6. Plaintiff also alleges that the City of Honolulu's bicycle registration fee constitutes a charge under HRUS. Opp. 35.

■ The charge exception under HRUS "speaks only to the explicit quid pro quo arrangement whereby a landowner conditions admission to the land upon payment of a fee." *Howard v. United States,* 181 F.3d 1064, 1067 (9th Cir.1999) (quoting *Viess v. Sea Enterprises Corp.,* 634 F.Supp. 226, 229 (D.Haw.1986)). This exception is much more narrow than the general fee provisions found in other recreational use statutes, some of which may allow the finding of liability where a defendant obtains some less obvious benefit from plaintiff's use of the land. *Howard,* 181 F.3d at 1607, 1070; *Viess,* 634 F.Supp. at 229.

In the instant case, the United States does not charge, and specifically did not charge Plaintiff, to enter the Bike Path. Plaintiff alleges that the United States Navy receives a financial benefit from the Bike Path when its members commute by bicycle on the Bike Path, reducing the need for parking spaces at the Pearl Harbor Naval Station. Brown Decl. ¶ 6. However, such a benefit is not the type of charge contemplated by HRUS. As *Howard* and *Viess* make clear, the HRUS exception applies only where there is an explicit quid pro quo—where the owner

conditions admission on the payment of a fee. *Howard,* 181 F.3d at 1067; *Viess,* 634 F.Supp. at 229. The United States has provided evidence that no such fee or admission is charged for entry onto the Bike Path. Sayers Decl. ¶ 3-4. Defendant provides no evidence to the contrary.

Plaintiff's argument that the bicycle registration fee collected by the City of Honolulu constitutes a "charge" for use of the Bike Path similarly fails. The Court finds that a general bicycle registration fee imposed by the City does not constitute the quid pro quo required for a finding that the United States charged the Plaintiff to enter this Bike Path. Accordingly, the Court finds that the United States did not charge Plaintiff to enter the Bike Path and the "charge" exception to the HRUS is not applicable.

**C. Defendant Has Failed to Show that Plaintiff Was on the Bike Path for "Recreational Purposes"**

■ Plaintiff argues that the HRUS is not applicable because Plaintiff was not using the Bike Path for "recreational purposes." The HRUS's limitation of liability only applies to an owner who either directly or indirectly invites or permits a person to use the property for "recreational purposes." *See* Haw.Rev.Stat. ¶ 520-4. "Recreational purpose includes but is not limited to any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, water skiing, winter sports, and viewing or enjoying historical, archaeological, scenic, or scientific sites." Haw.Rev.Stat. § 520-2. *See also, e.g., Palmer v. United States,* 945 F.2d 1134, 1137 (9th Cir.1991) (entering swimming pool premises to supervise grandchildren's activities while lounging in the sun is recreational purpose under HRUS); *Viess,* 634 F.Supp. at 227 (boogie boarding is recreational purpose under HRUS).

The Court finds that although bicycling may sometimes be a recreational purpose under HRUS, bicycling for the purpose of commuting to or from work is not recreational.[4] Plaintiff has claimed that his subjective intent in entering the Bike Path on the day of the accident was not for recreational bicycling, but for the purpose of commuting. The United States has urged this Court to focus on the United States' subjective intent in opening the land to the public rather than the Plaintiff's subjective intent for entering the land on the day of the accident.

In support of this proposition, the United States cites two significant cases that interpret the "recreational purpose" requirement. In *Howard v. United States*, the government opened its harbor to the public for recreational use without a fee. 181 F.3d 1064 (9th Cir.1999). The plaintiff claimed that her participation in a privately-run sailing course in the harbor was not a recreational use under the HRUS because she had a professional motive in enrolling in the course. The Ninth Circuit held that the landowner's intent controls whether the purpose of the activity is recreational, and that the plaintiff's subjective intent for entering the land does not convert her into a nonrecreational user. *Id.* at 1073. Because the government opened the property for recreational use, the Court found that the HRUS applied and the government was immune from negligence liability.

The Hawaii Supreme Court was faced with a different situation in *Crichfield v.*

*Grand Wailea Company.* 93 Hawai'i 477, 6 P.3d 349 (Haw.2000). In *Crichfield,* the owner of the land (a hotel/resort) opened its grounds to the public for both recreational purposes (such as permitting public access to the beach) and commercial purposes (encouraging the public to patronize the resort monetarily, such as by having lunch at the resort's restaurant). The Hawaii Supreme Court held that under such circumstances, like the subjective intent of the owner, the plaintiffs' subjective intent in being present on the owner's land is also material to whether the plaintiffs were recreational users engaged in a recreational purpose at the time of the injury. *Id.* at 487, 6 P.3d 349 (finding that plaintiffs' submission of depositions stating that they entered the land for the purpose of purchasing lunch raised an issue of material fact as to whether plaintiffs were recreational users).

The *Howard* and *Crichfield* courts agree that the "subjective intent of an 'owner' of 'land' is obviously relevant to whether he or she has directly or indirectly invited or permitted" a person to use the land for a recreational purpose. *Crichfield,* 93 Hawai'i at 487, 6 P.3d 349; *see also Howard,* 181 F.3d at 1072–1073 (the proper focus is on the landowner's intent). In the instant case, Defendant has failed to demonstrate that it intended to open the Bike Path for only recreational, and not also non-recreational, purposes. Mayor Fasi's letter to the United States Navy dated July 24, 1972 states that the City "visualize[s] a dual purpose for the bikeway from Halawa

4. Although pursuant to U.S.Ct. of App.9th Cir. Rule 36–3 the Court is not relying on this decision, it notes that the Ninth Circuit has found similarly. *See Wettstein v. United States,* 69 F.3d 546, 1995 WL 641353, at *1 (9th Cir.1995) (finding that bicyclist was engaged in recreational activity under California's recreational use statute because injury occurred while engaging in bicycle ride "for the purpose of exercising and sightseeing—

not transportation," and noting that not all bicycle riding is recreational). This Court likens the distinction between recreational bicycling and non-recreational bicycling to the distinction between "pleasure driving" and other driving that the statute makes. Haw. Rev.Stat. § 520–2. The situation at bar might be compared to the grant of an easement for a vehicular roadway to allow commuting as well as "pleasure driving."

to Lualualei" as a recreational route and of "equal importance" as a "practical transportation route which could eventually be incorporated as part of a bikeway extended to Honolulu by way of Kamehameha Highway or Nimitz Highway." U.S. Concise Statement, Ex. B. The August 21, 1972 letter from Rear Admiral J.L. Butts to former Mayor Frank Fasi does not dispute the dual purposes of the Bike Path but does contemplate that "utilization of the corridor for recreational purposes will be a great benefit to all the people of this Community." *See* U.S. Concise Statement, Ex. C.

Most importantly, the grant of easement itself does not limit the use of the Bike Path to recreational use. The grant prohibits commercial operations on the Bike Path but does not prohibit other non-recreational uses such as commuting. Grant of Easement ¶ 5 (Oct. 7, 1974). The grant of easement even reserves the right of the United States and its assigns to operate vehicles over the Bike Path. Grant of Easement ¶ 7. In fact, the United States does not argue that transportation such as commuting is prohibited on the Bike Path or that the Bike Path is restricted to recreational use. Reply, at 4. The Court finds that the United States has not demonstrated that its intent in granting the easement was to allow only recreational purposes on the Bike Path.

■ Under *Crichfield*, because the land owner's subjective intent in opening the

land appears to have included non-recreational purposes, the Court must also look to Plaintiff's subjective intent to determine whether Plaintiff had a "recreational purpose" under HRUS for entering the property.[5] *See Crichfield*, 93 Hawai'i at 487, 6 P.3d 349. The Court finds that Plaintiff has raised a material issue of fact as to whether he was a recreational user. *Crichfield*, 93 Hawai'i at 487, 6 P.3d 349. Plaintiff's declaration and deposition clearly evidence his intent to enter the Bike Path for the purpose of commuting on the morning of the accident. Brown Decl. ¶ 7; Brown Depo. 21–23. The United States has presented no contrary evidence.

Accordingly, based on the evidence before the Court at this time in this motion for summary judgment, the Court finds that Defendant has failed to show that Plaintiff was a recreational user of the Bike Path. By its terms, HRUS only applies where a person enters the land for a recreational purpose. *See Crichfield*, 93 Hawai'i at 485, 6 P.3d 349 ("if a person is injured on an 'owner's' land, but that person was not on the land for a 'recreational purpose,' HRUS does not, by its plain language, immunize the 'owner' from tort liability"). Therefore, the Court cannot find in this motion for summary judgment that HRUS limits the United States' liability in this action.[6]

### CONCLUSION

For the foregoing reasons, the Court finds that the United States has not dem-

---

5. Under this Court's reading of *Crichfield*, where the land owner opens the land to the public for recreational purposes only, a plaintiff's subjective intent in entering the land remains irrelevant under the HRUS. *See Crichfield*, 93 Hawai'i at 487, 6 P.3d 349 ("[w]e note, however, as a preliminary matter, that the subjective intent of an 'owner' of 'land' is obviously relevant to whether he or she has directly or indirectly invited or permitted" plaintiff to use the land for a recreational purpose). Indeed, if the land owner

only has an intent to open the land to the public for recreational purposes, and a plaintiff enters the land for a non-recreational purpose, plaintiff would be on the land without permission.

6. Because the Court declines to limit the Defendants liability under HRUS at this time, the Court need not reach the issue of whether the wilful or malicious exemption to HRUS applies.

onstrated that HRUS exempts it from negligence liability to Plaintiff stemming from the July 8, 1998 accident. Accordingly, the Court DENIES the United States' motion for summary judgment against Plaintiff.

IT IS SO ORDERED.