**Electronically Filed
Supreme Court
SCWC-16-0000570
05-MAY-2020
07:51 AM**

SCWC-16-0000570

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

_____

SHADLEY HAYNES, KURSTIN HAYNES, Individually and as Parent
and Legal Guardian of Minor Children JH and NH; THE OTHER SIDE -
ROCKSTARZ - LLC, Petitioners/Plaintiffs-Appellants

vs.

GREGORY FOWLER HAAS; FPA GOLD COAST ASSOCIATES, LLC;
CLARK REALTY CORPORATION; KONA METRO PARKING & WATCHMAN
SERVICES, INC.; ALLIED SELF STORAGE CENTER; GUIDO GIACOMETTI;
CHUNG PARTNERS, Respondents/Defendants-Appellees.

_____

SCWC-16-0000570

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-16-0000570; CIV. NO. 12-1-0301K)

MAY 5, 2020

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF THE COURT BY RECKTENWALD, C.J.

## I.  INTRODUCTION

This appeal requires us to address whether a plaintiff
can recover damages for injury from a common-law public

nuisance.  We conclude that, as a matter of law, such a claim is cognizable when the plaintiff has suffered individualized harm.

Plaintiff Shadley Haynes (Shadley) was allegedly assaulted by Gregory Haas (Haas) in the parking lot of Rockstarz, a bar that Shadley and his wife, Kurstin Haynes, owned and operated.  Shadley sustained serious injuries.  Rockstarz - now closed - was located about 0.3 miles from Allied Self Storage Center (Allied).

Shadley, Kurstin,[1] and The Other Side - Rockstarz - LLC (collectively, "Plaintiffs"), filed suit in the Circuit Court of the Third Circuit alleging that Allied and Chung Partners (collectively, "Defendants") had created and maintained a public nuisance by permitting Haas and other homeless individuals to live on their premises in violation of Hawai'i County zoning codes.  Plaintiffs alleged that the nuisance was a substantial factor in causing Plaintiffs' injuries and that they are entitled to damages.

The circuit court granted summary judgment in favor of Defendants.[2]  The Intermediate Court of Appeals (ICA) affirmed

---

[1]    Kurstin sued Defendants both as an individual and as the parent and legal guardian of JH and NH, Kurstin and Shadley's children.

[2]    The circuit court also granted Chung Partners' Motion for Costs under

(continued)

the circuit court's summary judgment orders on the grounds that Plaintiffs could not recover damages for public nuisance in the absence of a statute designating the activity as a public nuisance. On certiorari, Plaintiffs argue that the ICA gravely erred in its conclusion that they were foreclosed from recovering damages as a matter of law.

We hold that a plaintiff can recover damages stemming from a public nuisance even absent an explicit statutory prohibition of the challenged conduct when the plaintiff has suffered individualized harm. We thus vacate the circuit court's order granting summary judgment to Defendants and the ICA's order affirming the circuit court, and remand for further proceedings consistent with this opinion.

## II. BACKGROUND

### A. Circuit Court Proceedings[3]

#### 1. Complaint

Plaintiffs filed their Complaint on May 2, 2012, and amended it three times.[4] Count V of the Third Amended Complaint,

---

Hawai'i Rules of Civil Procedure (HRCP) Rules 54(d) and 68, which the ICA affirmed in part. As set forth below, because we vacate the circuit court's grant of summary judgment, we also vacate the award of costs.

[3] The Honorable Ronald Ibarra presided.

[4] Plaintiffs' Third Amended Complaint also named Defendants Haas, FPA

(continued)

3

the only count that implicated Allied and Chung Partners,

alleged:

> 59. By allowing Defendant Haas and others to live in one of its storage units in violation of land use and public health laws, Defendant Allied caused its property and the surrounding non-residential area to become a home to vagrants, drug users, criminals and other dangerous and undesirable people who otherwise would not be in this business and industrial area at night. As a result, Defendant Allied created a condition that was (a) unreasonably dangerous and (b) affected a public place, and thereby maintained a public nuisance.

> 60. As lessee/sub-lessor of the 74-5540 Kaiwi Street property ("Allied Storage property"), Defendant Chung had a duty not to maintain the hereinabove described nuisance on the property.

> 61. Defendant Chung breached its duty not to maintain the hereinabove described nuisance on the Allied Storage property.

The Third Amended Complaint also alleged that as a

proximate result of this nuisance, Shadley suffered severe

physical injuries, traumatic brain injury, and severe emotional

distress; that Shadley, Kurstin, and their children, JH and NH,

suffered other special and general damages to be proven at

---

Gold Coast Associates, LLC (Gold Coast), Clark Realty Corporation (Clark), Kona Metro Parking & Watchman Services, Inc. (Metro), Guido Giacometti (Giacometti), and Doe Defendants 1-10. Plaintiffs alleged that Gold Coast owned and leased the property where Rockstarz was located, while Clark was a property management business. According to Plaintiffs, Metro was a security business for parking lots and other areas around the Rockstarz building, and Giacometti was the receiver Clark had hired to manage the Rockstarz premises' daily affairs.

In addition to Count V against Defendants, Plaintiffs' complaint asserted one count of assault and battery against Haas, four counts of negligence and gross negligence against Gold Coast, Clark, Metro, and Giacometti, respectively, and one count against all of the defendants on behalf of JH and NH for loss of consortium, intentional infliction of emotional distress, and negligent infliction of emotional distress.

trial; and that Rockstarz suffered loss of business and diminished business reputation.

### 2. Chung Partners' Motions for Summary Judgment

In two separate motions for summary judgment, Chung Partners argued that it was not liable for Plaintiffs' damages, first because it had no duty to Shadley, and second because it had no knowledge of homeless individuals residing in storage units. Allied filed a notice of joinder in both motions.

Chung Partners argued that under Restatement (Second) of Torts §§ 837[5] and 356[6] (Am. Law Inst. 1979) (Restatement) it

---

[5] Restatement 2d of Torts § 837 provides:

> (1) A lessor of land is subject to liability for a nuisance caused by an activity carried on upon the land while the lease continues and the lessor continues as owner, if the lessor would be liable if he had carried on the activity himself, and
>
> (a) at the time of the lease the lessor consents to the activity or knows or has reason to know that it will be carried on, and
>
> (b) he then knows or should know that it will necessarily involve or is causing the nuisance.

[6] Restatement 2d of Torts § 356 comment (a) provides:

> When land is leased to a tenant, the law of property regards the lease as equivalent to a sale of land for the term of the lease. The lessee acquires an estate in the land, and becomes for the time being the owner and occupier, subject to all of the liabilities of one in possession, both to those who enter the land and to those outside of it . . . . [I]t is the general rule that the lessor is not liable to the lessee, or to others on the land, even though such injuries resulted from a dangerous condition existing at the time of the transfer.

could only be held liable for nuisance on its leased land if it possessed the land when the nuisance occurred or (1) would be liable if it carried on the alleged nuisance; (2) consented to such activity; and (3) knew that such activity would "necessarily result in" the nuisance.

Chung Partners argued that although Hawai'i case law was silent on applying Restatement § 837, "ample case law" from other jurisdictions supported its application.[7]  And, citing Hao v. Campbell Estate, 76 Hawai'i 77, 869 P.2d 216 (1994), Chung Partners argued that Hawai'i cases had recognized Restatement § 356's general rule that "landowner[s were] not liable for injuries occurring after a lessee takes possession of the land."

Chung Partners submitted a declaration of one of its principals, Sung Hun Chung, stating that Chung Partners did not know that Allied allowed people to reside in storage units, and

---

[7]    Chung cited to the following cases for support: City of Los Angeles v. Star Sand & Gravel Co., 12 P.2d 69 (Cal. Ct. App. 1932) (holding that owner of premises leased for purpose attainable without creating nuisance was held not liable for creation of nuisance without owner's knowledge or notice); Silverman v. Unsen, 147 A. 421 (Me. 1929) (holding that lessor of shooting gallery was not liable to third person for injury resulting from lessee's negligence); Meloy v City of Santa Monica, 12 P.2d 1072 (Cal. Ct. App. 1932) (holding that in order to charge landlord with liability, nuisance must necessarily result from tenant's ordinary use of premises, or from purposes for which premises were let); Wasilewski v. McGuire Art Shop, 187 A. 530 (N.J. 1936) (holding that landlord renting entire store premises to tenant who undertook to make repairs was not liable for pedestrian's injury when caused by tenant's negligence); Midland Oil Co. v. Thigpen, 4 F.2d 85 (8th Cir. 1924) (holding that a tenant, not a landlord, will be "owner" so far as negligent injuries to third parties are concerned).

furthermore, that Plaintiffs' complaint failed to even allege such information.  Accordingly, Chung Partners concluded that it could not be held liable for public nuisance.

Chung Partners next argued that, contrary to Plaintiffs' assertion, it had no "duty not to maintain" a nuisance on Allied's property.  Chung Partners explained that under Hawai'i case law, "courts are reluctant to impose a duty on owners and occupiers of land to protect others against the criminal act[s] of third parties."  And, because Hawai'i follows Restatement § 315,[8] only a "special relationship" between Chung Partners and Plaintiffs could require Chung Partners to protect them from harm by Haas.  In the instant case, Chung Partners argued, there was no special relationship between it and Plaintiffs.  Accordingly, Chung Partners concluded that it could not have been required to control Haas' conduct.

---

[8]     Restatement § 315 provides:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless:
>
> (a) A special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) A special relation exists between the actor and the other which gives to the other a right to protection.

7

In Chung Partners' second Motion for Summary Judgment, it noted that Restatement § 821B construed public nuisances as unreasonable <u>conduct</u> of a certain nature.[9]  Second, Chung Partners pointed out that in <u>Littleton v. State</u>, 66 Haw. 55, 67, 656 P.2d 1336, 1344-45 (1982), this court held that for behavior to be a public nuisance, the act or use of the property at issue must have been in a public place or somewhere the public frequently congregated.

Chung Partners further maintained that <u>people</u> could not be nuisances; only their unreasonable conduct could be a nuisance if it interfered with a common right.  And even if Allied created a nuisance, it did not create an unreasonable interference with any right common to the general public or to

---

[9]     Restatement § 821B provides:

> (1)   A public nuisance is an unreasonable interference with a right common to the general public.
>
> (2)   Circumstances that may sustain a holding that an interference with a public right is unreasonable include the following:
>
> (a)   Whether the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort, or the public convenience, or
>
> (b)   whether the conduct is proscribed by a statute, ordinance, or administrative regulation, or
>
> (c)   whether the conduct is of a continuing nature or has produced a permanent or long-lasting effect, and, as the actor knows or has reason to know, has a significant effect upon the public right.

the Plaintiffs 0.3 miles away.

   3.  **Plaintiffs' Response to Chung Partners' Motions for Summary Judgment**

        Citing Littleton v. State, 66 Haw. at 67, 656 P.2d at 1344-45 (1982), and Territory v. Fujiwara, 33 Haw. 428, 429-30 (1935), Plaintiffs argued that a court may not decide at summary judgment whether a public nuisance exists; instead, that question is reserved for the fact-finder.  Plaintiffs also argued that, as a matter of law, defendants can be held liable for public nuisances that extend from activity on the defendants' property.

        Plaintiffs next noted that the use of the storage units for residences was "illegal" because the area was zoned as "General Industrial."  Furthermore, Plaintiffs relied on the expert testimony of Spike Denis, a premises security expert, that it was reasonably foreseeable that homeless residents would commit assault, not only on the premises but in the surrounding community.

        Plaintiffs presented evidence that the encampment at Allied was long-running and obvious.  For example, Plaintiffs quoted from the declaration of James Smith, who stated that he resided in a storage unit, and that Roy Ebert, who worked under Sung Hun Chung, told Smith "what I don't see, I don't know," in

reference to residential use of the storage unit. Plaintiffs further stated that Allied changed its name to Kaiwi Storage after this incident, and hired Metro to address the issue of homeless individuals residing in units. Metro employees working there after the assault testified that they observed signs of residential use on the property.

Plaintiffs argued Chung Partners was liable for the nuisance maintained by Allied because one of Chung Partners' principals, Sung Hun Chung, knew or should have known of the homeless situation on Allied's leased property. On the date of the incident, Plaintiffs alleged, Sung Hun Chung was not only the managing partner of Chung Partners, but also the manager and secretary of Allied. Further, Sung Hun Chung had an office and P.O. box on Allied's premises for nearly six years. Accordingly, Plaintiffs argued Sung Hun Chung knew or should have known about Allied's homeless residents.[10]

---

[10] Plaintiffs presented two other alternative theories of liability. First, Plaintiffs argued that there were unresolved issues of material fact as to whether Chung Partners, as transferee of Allied's business in 2012, assumed Allied's liabilities. Though the purchase and sale agreement was written as a sale of assets, Plaintiffs raised several factual issues that they contended could have supported Chung Partners' liability.

Second, Plaintiffs argued that Chung Partners was never out of possession of the premises leased to Allied, and therefore Chung Partners was tenants-in-common with Allied and equally liable for Allied's torts. The Allied premises were originally leased by the Trustees of the Lili'uokalani

(continued)

The circuit court heard Chung Partners' Motions for Summary Judgment and Allied's Notice of Joinder, and subsequently granted the three motions in a minute order. The court's minute order was brief and did not explain its specific rationale for granting Defendants' motions for summary judgment.

Chung Partners then filed a Motion for Costs pursuant to HRCP Rules 54(d)[11] and 68[12]. In its Memorandum of Support,

---

Trust to Chung Partners. Chung Partners thereafter subleased a portion of the premises to Allied, but the sublease did not provide specific metes and bounds of the premises. Therefore, Allied and Chung Partners were co-tenants in equal possession of the premises under Hawai'i law and Allied maintained interest in all of the larger area.

[11]    HRCP Rule 54(d) provides in relevant part:

> (d) Costs; Attorneys' Fees
>
> (1)    Costs Other Than Attorneys' Fees. Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the State or a county, or an officer or agency of the State or a county, shall be imposed only to the extent permitted by law...
>
> (2) Attorneys' Fees.
>
> > (A)    Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.

[12]    HRCP Rule 68 provides:

> At any time more than 10 days before the trial begins, any party may serve upon any adverse party an

(continued)

11

Chung Partners alleged that after a failed attempt to mediate, it offered to settle for $25,000 pursuant to HRCP Rule 68 on August 6, 2015, with "each party to bear their own fees and costs," which Plaintiffs rejected. Chung Partners incurred costs of $29,429.69 prior to its Offer of Settlement and $35,546.76 after the offer was rejected. After a hearing, the court granted Chung Partners' Motion for Costs in the amount of $22,085.22 without stating whether it was granting the motion based on HRCP Rule 54(d) or Rule 68.

---

<u>offer of settlement or an offer to allow judgment to be taken against either party for the money or property or to the effect specified in the offer, with costs then accrued.</u> If within 10 days after the service of the offer the adverse party serves written notice that the offer is accepted, either party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the clerk shall, in accordance with the agreement, enter an order of dismissal or a judgment. An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible except in a proceeding to determine costs. <u>If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer</u>. The fact that an offer is made but not accepted does not preclude a subsequent offer. When the liability of one party to another has been determined by verdict or order or judgment, but the amount or extent of the liability remains to be determined by further proceedings, either party may make an offer of judgment, which shall have the same effect as an offer made before trial if it is served within a reasonable time not less than 10 days prior to the commencement of hearings to determine the amount or extent of liability.

(Emphases added).

**B.    ICA Proceedings**

**1.    Opening Brief**

Plaintiffs appealed the circuit court's orders granting summary judgment and awarding costs to Chung Partners. They argued that under Hawai'i case law, whether a public nuisance existed and whether a plaintiff's injuries were proximately caused by a defendant's breach of a statutory duty were questions for a jury to decide, citing to this court's opinions in Littleton v. State, 66 Haw. 55, 67, 656 P.2d 1336, 1345 (1982) and Territory v. Fujiwara, 33 Haw. 428, 429-30 (Terr. 1935). Plaintiffs also contended that there remained genuine issues of material fact as to the existence of a public nuisance on the Allied premises and Chung Partners' liability for it.

Plaintiffs also argued that the circuit court's award of costs to Chung Partners was improper. First, Plaintiffs argued that because summary judgment was inappropriate, Chung Partners was not the prevailing party. Plaintiffs then argued that even if summary judgment were proper, the award of costs was still inappropriate because applying HRCP Rule 68 as written could deprive Plaintiffs of the constitutional right to have a jury decide liability.

Plaintiffs also asserted Chung Partners' HRCP Rule 68

13

offer of settlement was defective because it did not offer to pay Plaintiffs' costs, nor would the offer fully and completely resolve all of Plaintiffs' claims because it did not include an admission of liability.  Thus, Plaintiffs concluded the circuit court erred in granting Chung Partners' Motion for Costs.

## 2.   Answering Briefs[13]

Allied first disputed Plaintiffs' claim that homelessness could be a public nuisance.  Relying on Restatement

---

[13]   Haas' liability for the assault was not contested on appeal.  However, Haas filed an Answering Brief to the ICA that asserted the following four points of error in the circuit court's ruling:

> (1) Judge Ibarra had a conflict of interest because he presided over both the criminal and civil case in the same matter.  After the jury convicted Haas in the criminal trial, "numerous rulings" were made, including summary judgment;
>
> (2) Haas did not assault anyone and was attacked by employees of Rockstarz who were drinking alcohol and using drugs.  The alleged attack against Haas resulted in serious injuries including permanent paralysis to half of Haas' face and four broken teeth.  Haas required stitches and facial surgery, including metal plates in his eye socket;
>
> (3) there was evidence spoliation of a hard drive containing surveillance camera footage.  The footage, according to Haas, was hidden from prosecutors and police for over a year until a third party notified the prosecutor that the video evidence existed.  Haas then alleged that Haynes' attorney "spoiled" the evidence because the footage could not be viewed from the hard drive, despite the police purchasing a special player for the hard drive; and
>
> (4) that he was "definitely not living at the Kona storage facility and in fact never slept there."  Further, being homeless did not have anything to do with this incident.

Given our disposition of the case, we need not address Haas' arguments.

§ 821B(1) and Littleton, 66 Haw. at 67, 656 P.2d at 1344-45, Allied defined public nuisance as unreasonable conduct that interferes with a public right. According to Allied, Plaintiffs claimed the circumstance of homelessness, as opposed to the conduct of homeless people, was the nuisance. Allied also noted that the mere act of being homeless did not interfere with a right common to the general public and that Plaintiffs failed to provide any evidence of unreasonable interference with some public right. Allied concluded that homelessness was not a public nuisance.

Finally, Allied argued that Plaintiffs failed to point to any evidence in their Opening Brief that the assault was reasonably foreseeable. Nor, Allied contended, was there any evidence presented that Allied knew or should have known homeless people were sleeping in rented units. Finally, the normal and usual operation of a self-storage business did not involve liability for an assault by an alleged homeless resident "almost half a mile away" from the property.

The arguments in Chung Partners' Answering Brief mirrored those presented by Allied, and additionally contested Plaintiffs' assertion that it knew or should have known of the homeless individuals residing in storage units. Chung Partners also argued that it did not assume liability for Allied's torts

15

through its purchase of Allied's assets, which occurred almost a year after the incident.

Further, Chung Partners asserted that the circuit court did not err in awarding it costs.  Because the court granted summary judgment against Plaintiffs, Chung Partners argued that the claim that Plaintiffs were deprived the right to have a jury determine its liability was inapplicable because it was entitled to judgment as a matter of law.

### 3.  ICA's Memorandum Opinion

The ICA held that the circuit court did not err in granting summary judgment.  The ICA noted that in bringing their public nuisance claim, Plaintiffs sought monetary damages rather than equitable or injunctive relief.  Although no party had raised this argument, the ICA determined from a review of the case law that this court recognizes that only declaratory and injunctive relief – but not monetary damages – can be recovered for public nuisance claims not founded on a statutory duty.[14] The ICA took the position that in Littleton, liability was predicated upon a statutory duty to prevent a public nuisance.

---

[14]     The ICA cited several cases as examples, including Akau v.  Olohana Corp., 65 Haw.  383, 652 P.2d 1130 (1982) (holding plaintiffs only had standing for public nuisance claims seeking declaratory and injunctive relief), and Ideta v. Kuba, 22 Haw. 28 (Haw. Terr. 1914) (holding unlawful obstruction of a public road or highway also constitutes a public nuisance for which a claim for injunction can be brought).

And, in <u>Fujiwara</u>, which Plaintiffs also relied on, the court considered whether defendants maintained a public nuisance that violated a criminal statute.  Accordingly, the ICA disagreed with Plaintiffs' interpretation of these cases and found that summary judgment was appropriate.

With respect to costs, the ICA determined that awarding costs to Chung Partners, the prevailing party, was proper under HRCP Rule 54.  Despite this, the ICA concluded that Chung Partners' settlement offer was not a valid Rule 68 offer because it excluded "costs then accrued."  Therefore, the ICA held that the circuit court erred in granting Chung Partners' Motion for Costs under HRCP Rule 68, and it remanded the case to the circuit court to determine the appropriate amount of costs to award Chung Partners under HRCP Rule 54(d).

**C.   Application for Writ of Certiorari**

On certiorari, Plaintiffs argue that the ICA gravely erred in affirming the circuit court's rulings granting summary judgment on the theory that a plaintiff can only recover damages for public nuisance where the defendant has violated a statutory duty.  As a result, Plaintiffs also contend that the ICA erred by affirming the award of costs to Chung Partners under HRCP Rule 54(d).

17

### III.  STANDARD OF REVIEW

On appeal, the grant or denial of summary judgment is reviewed de novo.  State ex rel. Anzai v. City and Cnty. of Honolulu, 99 Hawai'i 508, 515, 57 P.3d 533, 440 (2002).

> [S]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Kahale v. City and Cnty. of Honolulu, 104 Hawai'i 341, 344, 90 P.3d 233, 236 (2004) (citation omitted).

### IV.  DISCUSSION

The ICA erred in holding that a plaintiff can only recover damages for public nuisance where the defendant has violated a statutory duty.  Because there are genuine issues of material fact as to whether Plaintiffs' claims were viable, summary judgment was improper.  Accordingly, Chung Partners' Motion for Costs also should have been denied.

**A.  The ICA Erred by Concluding That Damages Were Not Recoverable for Public Nuisance Actions Absent a Statutory Duty**

In Littleton, the court wrote:

A nuisance has been variously defined to mean that which unlawfully annoys or does damage to another, anything that works hurt, inconvenience, or damage, anything which annoys or disturbs one in the free use, possession, or enjoyment of his [or her] property or which renders its ordinary use or physical occupation uncomfortable, and anything wrongfully done or permitted which injures or annoys another in the enjoyment of his [or her] legal

18

> rights.
>
> . . .
>
> A nuisance, to be a public nuisance, must be in a
> public place, or where the public frequently
> congregate, or where members of the public are likely
> to come within the range of its influence[.]

66 Haw. at 67, 656 P.2d at 1344 (citing 58 Am. Jur. 2d Nuisances § 1 at 555 (1971); City of Burlington v. Stockwell, 47 P. 988, 989-90 (Kan. App. 1897)).

In the instant case, the ICA held that equitable relief is a plaintiff's only remedy in public nuisance actions in the absence of a statutory duty to refrain from conduct creating or maintaining a public nuisance. On certiorari, Plaintiffs challenge this holding, asserting that it improperly interprets Littleton, 66 Haw. at 69, 656 P.2d at 1339. We agree with Plaintiffs that a different conclusion is warranted.

In Littleton, the court addressed whether the City and County of Honolulu could be liable for damages to a plaintiff who had been injured on the beach by a washed-up log when the City failed to fulfill its statutory mandate under HRS § 46-12 to remove debris that could constitute a "public nuisance." Id. at 66, 656 P.2d at 1344. After examining HRS § 46-12's legislative history, which characterized O'ahu's beaches and shores as "valuable assets" that needed "regular maintenance[,] vital to the tourist industry [and] recreation[,]" we explained:

19

> We think . . . that the City has the sole
> responsibility to remove and clear all seaweed, limu,
> and debris "which is likely to create an unsanitary
> condition or to otherwise become a public nuisance"
> from those shores and beaches around Oahu which are
> likely to be used with some frequency by . . . the
> public. So that if the City fails to perform this
> statutory duty and permits a condition to exist
> which, of itself, creates an unreasonable risk of
> harm, then the City may be held liable for any
> resulting injury. Its liability would be predicated
> upon the breach of a statutory duty which leads to
> harm.

Id. at 66-67, 656 P.2d at 1344 (emphasis added) (citation omitted).

It was from this passage that the ICA derived its rule that, absent such a statutory duty, a plaintiff could obtain only equitable relief in a public nuisance action.

A closer look at Littleton, however, as well as other cases from our jurisdiction, does not support such a narrow rule. As the ICA observed, this court has generally awarded injunctive and declaratory relief, rather than damages, in public nuisance actions. See Akau, 65 Haw. 383, 652 P.2d 1130 (1982) (holding that plaintiffs had standing to assert a public nuisance claim and seek injunctive or declaratory relief); Ideta, 22 Haw. 28 (holding that an unlawful obstruction of a public road was a public nuisance from which a suit for injunction could be brought); Cluney v. Lee Wai, 10 Haw. 319 (Haw. Rep. 1896) (holding that plaintiffs were entitled to injunctive relief from nuisance of loud instruments during the

20

nighttime); City and Cnty. of Honolulu v. Cavness, 45 Haw. 232, 233, 364 P.2d, 646, 648 (1961) (holding that abatement by demolition of building that constituted a public nuisance was appropriate remedy).

However, none of these cases, including Littleton, expressly rejected a claim for damages in the absence of a statutory duty. To the contrary, several cases from our jurisdiction suggest that damages are available even absent the breach of a statutory duty.

In Choy Too v. Kaiwiki Sugar Co., 32 Haw. 611 (1933), the Supreme Court of the Territory of Hawai'i held that in a wrongful death action, a complaint alleging both negligence and nuisance could proceed as one cause of action for damages. Id. In that case, the wife of the decedent, on behalf of their children, sued Kaiwiki Sugar Company and alleged that the decedent was killed: "(1) [by] the negligent and wrongful act of the said defendant and (2) by the said defendant maintaining a public nuisance." Id. at 612. The court explained:

> We think the complaint only alleges one cause of action which, in separate counts, is presented in two different aspects. . . . Only one right is sought to be enforced and that is the right of the plaintiffs to recover damages for the wrongful or negligent death of their father. . . . The case presents the familiar rule that in actions ex delicto, such as this, the plaintiff does not state two or more causes of action but only one, when, in different counts, he bases his right to recover on different grounds, so long as these grounds are not inconsistent with each

21

> other and relate to the vindication of one primary
> right.

Id. at 625 (Emphasis added).  In other words, the territorial
court recognized that a plaintiff could recover damages in a
public nuisance action.  Id.

Damages for nuisance claims were also permitted in
Fernandez v. People's Ice and Refrigerating Co., 5 Haw. 532, 533
(1886), and Whitesell v. Houlton, 2 Haw. App. 365, 366, 632 P.2d
1077, 1078 (1981).  In Fernandez, the Supreme Court of the
Kingdom of Hawaiʻi awarded damages to the plaintiff when soot and
smoke from the furnace of an ice factory caused specific harm to
the plaintiff and his property, finding that necessity of
providing ice to the public was not a defense to the claim.  5
Haw. at 535.  And in Whitesell, the ICA determined that a
defendant whose banyan tree encroached onto a neighboring
property could be liable for damages from the tree's falling
branches.  2 Haw. App. at 365-66 (although "non-noxious plants
ordinarily are not nuisances," in cases where overhanging
branches or roots cause harm to other property, "the damaged or
imminently endangered neighbor may require the owner of the tree
to pay for the damages[.]").

Chung Partners argues that Fernandez and Whitesell are
inapplicable because those cases concerned private, rather than

public, nuisances. Chung Partners' argument lacks merit. First, the text of the cases does not limit their applicability to either "public" or "private" nuisances. In fact, neither case specifies to which category the nuisance belonged. And this court and others have recognized that nuisances can properly be classified as both. See Fujiwara, 33 Haw. at 429-30 ("Nuisances are classified into public nuisances and private nuisances, or sometimes as both public and private. The latter are sometimes called mixed nuisances, or . . . those which are public and which at the same time cause special damages to private individuals."); Prins v. Schreyer, 406 A.2d 439, 442 (Md. Ct. Spec. App. 1979) (explaining that public nuisances could be classified as (1) per se or statutory nuisances; (2) nuisances that prejudice public health or comfort; and (3) nuisances "which in their nature are not nuisances, but may become so by reason of their locality, surroundings, or the manner in which they may be maintained") (citing Burley v. City of Annapolis, 34 A.2d 603 (Md. 1943)).

Thus, our case law does not require a statutory breach in order for a plaintiff to assert a claim for damages. Littleton provides an example of when a statute would give rise to a damages remedy, but does not limit damages to statutory violations. Furthermore, although this court has provided

23

injunctive relief in public nuisance cases, we have not explicitly rejected a damages remedy.

In order to clarify our public nuisance law, Plaintiffs ask this court to adopt Restatement § 821C,[15] which allows an individual to sue for damages under a public nuisance theory if they have suffered a harm different than that of the public.[16]  Under the Restatement, "when the public nuisance causes personal injury to the plaintiff or physical harm to his land or chattels, the harm is normally different in kind from that suffered by other members of the public."  Restatement (Second) of Torts § 821C, cmt. d (Am. Law Inst. 1979).  The Restatement rule would therefore allow Plaintiffs in this case

_____

[15]     Restatement § 821C (Who Can Recover for Public Nuisance) provides:

> (1) In order to recover damages in an individual action for a public nuisance, one must have suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of interference.

> (2)  In order to maintain a proceeding to enjoin to abate a public nuisance, one must: (a) have the right to recover damages, as indicated in Subsection (1), or (b) have authority as a public official or public agency to represent the state or a political subdivision in the matter, or (c) have standing to sue as a representative of the general public, as a citizen in a citizen's action or as a member of a class in a class action.

[16]    In Akau, we cited to Restatement § 821C(2) with respect to standing to note the "trend in the law . . . away from focusing on whether the injury is shared by the public, to whether the plaintiff was in fact injured."  See 65 Haw. at 386 n.3.  However, we did not specifically adopt Restatement § 821C through that opinion.

to sue for damages since they are alleging a personal injury.

A number of jurisdictions have adopted a rule consistent with Restatement § 821C. See, e.g., Birke v. Oakwood Worldwide, 169 Cal. App. 4th 1540, 1550 (2009); Gilmore v. Stanmar, Inc., 633 N.E.2d 985, 993 (Ill. App. 3d 1994); T&L Redemption Center Corp. v. Phoenix Beverages, Inc., 561 N.Y.S.2d 619, 621 (1990) ("It is [] clear [] that one who suffers damage or injury, beyond that of the general inconvenience to the public at large, may recover for such nuisance in damages . . . . This is old law."); Johnson v. Bryco Arms, 304 F. Supp. 2d 383, 391 (E.D.N.Y. 2004). Such a rule is sensible:

> There are numerous differences between an action for tort damages and an action for an injunction or abatement, and precedents for the two are by no means interchangeable. In determining whether to award damages, the court's task is to decide whether it is unreasonable to engage in the conduct without paying for the harm done. Although a general activity may have great utility, it may still be unreasonable to inflict the harm without compensating for it. In an action for injunction, the question is whether the activity itself is so unreasonable that it must be stopped. It may be reasonable to continue an important activity if payment is made for the harm it is causing but unreasonable to continue it without paying.
>
> On the other hand, an award of damages is retroactive, applying to past conduct, while an injunction applies only to the future. In addition, for damages to be awarded, significant harm must have been actually incurred while for an injunction harm need only be threatened and need not actually have been sustained at all. (See [Restatement] § 821F, comment b). To maintain a damage action for a public nuisance, one must have suffered damage different in kind from that suffered by the general public; this is not necessarily true in a suit for abatement or injunction. (See [Restatement] § 821C).

7 Am. Law of Torts § 20:5, Public Nuisance (2019) (emphases added) (citing Restatement § 821B, cmt. i (Am. Law Inst. 1979)).

Restatement § 821C is consistent with our existing case law and logically sound. We thus adopt the rule as stated therein as Hawai'i law. The purpose of damages in public nuisance actions is to compensate plaintiffs who have suffered special harm from past nuisance conduct. Abatement of a present harm constituting a nuisance would not have the same effect of compensating a harmed person for their past injuries. In this case, resolving all disputed facts in Plaintiffs' favor, Plaintiffs meet the test set forth in § 821C. Thus, the ICA erred by affirming summary judgment for Defendants.

Under Hawai'i law, "[w]hether the act or thing [alleged to create a nuisance] is really so hurtful or prejudicial to others as to render it a common nuisance, is a question of fact to be determined by the jury, court or magistrate called to pass upon the same." Fujiwara, 33 Haw. at 430; see also Littleton, 66 Haw. at 67.

In this case, the circuit court's minute order provided no explanation for why it granted Defendants' motions for summary judgment. Defendants sought summary judgment on several bases, including that there was no nuisance and that

there was no duty owed to Shadley. However, viewing "the evidence and the inferences drawn therefrom in the light most favorable" to Plaintiffs as the non-moving party, genuine issues of material fact exist with respect to whether Defendants created or maintained a nuisance and whether Chung Partners was liable to Plaintiffs as lessor of Allied. We thus vacate the circuit court's judgment in favor of Defendants and the ICA's judgment affirming the circuit court.

By vacating the grant of summary judgment, we do not determine that allowing homeless individuals to reside on private property necessarily creates a public nuisance. The jury is best situated to determine whether the facts of this particular case, including the commercial nature of the alleged transaction between homeless individuals and Defendants and the fact that the incident took place in an industrial area.[17]

---

[17] At oral argument on Defendants' motions for summary judgment, Plaintiffs' counsel made fact-specific arguments as to the alleged nuisance present here:

> I think if you're a commercial business and you're operating illegally and providing a base for people to be in an area at [] night where they're not supposed to be . . . the question is is it a public nuisance? Suppose you had a camp that was very well regulated. . . . You had [] a security guard there who watched everyone and you were really trying to help these people. I don't think that would be a nuisance because you would have it under some control."

**B.  Because Chung Partners Was Not the Prevailing Party, It Was Not Entitled to Costs Under HRCP Rules 54(d) or 68**

The circuit court erred in entering judgment in Defendants' favor.  Thus, the order awarding Chung Partners its costs pursuant to HRCP Rules 54(d) or 68 was also incorrect.  We vacate the circuit court's and ICA's judgments accordingly.  Further, we decline to address Plaintiffs' argument as to the constitutionality of HRCP Rule 68 because the issue is moot.

## V.  CONCLUSION

For the foregoing reasons, we vacate the circuit court's August 5, 2016 and August 18, 2016 final judgments and the ICA's May 16, 2019 judgment on appeal affirming in part.  We further vacate in full the circuit court's July 2, 2016 amended judgment awarding costs to Chung, and remand for proceedings consistent with this opinion.

| | |
|---|---|
| James J. Bickerton and Bridget G. Morgan-Bickerton (Nathan P. Roehrig with them on the briefs) for petitioners | /s/ Mark E. Recktenwald /s/ Paula A. Nakayama /s/ Sabrina S. McKenna |
| Gregory K. Markham (Keith K. Kato and Kristen K. Souza with him on the briefs) for respondent Chung Partners | /s/ Richard W. Pollack /s/ Michael D. Wilson |

